CARRIE L. ROBINS v. MODERN WOODMEN OF AMERICA, Appellant.

**Beneficial insurance:** NEW TRIAL: NEWLY DISCOVERED EVIDENCE.
1  Where a beneficial association, pending an action by one of two contesting claimants, paid the amount of a death loss to the other in the regular and usual way but neglected to inform its counsel of the fact, the association, after judgment against it, could not urge that such payment constituted newly discovered evidence, entitling it to a new trial.

**New trial:** INADVERTENCE OR MISTAKE: EVIDENCE. A new trial will
2  not be granted on the ground of unavoidable casualty, misfortune or mistake, where it appears that the judgment was entered through the negligence of the party applying therefor. Evidence held to show negligence.

*Appeal from Linn District Court.*— HON. WM. G. THOMPSON, Judge.

FRIDAY, MAY 5, 1905.

THE opinion states the case.— *Affirmed.*

*Grimm, Trewin & Moffit,* for appellant.

*Cooper, Clemans & Lamb* and *John M. Thompson,* for appellee.

SHERWIN, C. J.— In May, 1899, the defendant issued to J. A. Robins, a member of its local camp of Cedar Rapids, Iowa, a benefit certificate for $2,000, in which his wife, the plaintiff herein, was named as the beneficiary. In February, 1902, Mr. Robins went to New Mexico for his health, leaving his wife and their young child in their home in Cedar Rapids, practically without means of support. Mrs. Robins left Cedar Rapids some time early in June, 1902, and went to Minneapolis, Minn., where she obtained employment. Mr. Robins returned to Cedar Rapids about the 1st of July, 1902, found that his wife had left the city, and was informed by her mother that she had eloped with another man, and that she did not know where she was. Mr. Robins was then very ill, and went to the home of Mr. Houstman, his wife's father, where he remained until his death, on the 15th day of July, 1902. After his return to Cedar Rapids, and after he had been told that his wife had eloped, he applied for a new certificate, in which Mrs. Houstman, his wife's mother, was to be named as the beneficiary. This certificate was issued on the 14th day of July, the day before Mr. Robins died. As soon as she learned of her husband's death, Mrs. Robins returned to Cedar Rapids; reaching there about the last of August, 1902. She immediately took steps to secure the amount of the certificate in which she was named as beneficiary, and on the 8th day of September following her attorneys sent to the appellant's head clerk at Rock Island, Ill., C. W. Hawes, sworn proof of the death of her

husband, and her claim as a beneficiary under the certificate issued to him in 1899. This was accompanied by a letter giving the date and number of the certificate under which the claim was made. The letter was answered on the 11th of October, 1902, by the general attorney of the appellant, Mr. J. G. Johnson, who resided at Peabody, Kan., where the letter was written. As the letter is of importance in determining the question before us, we set it out in full, as follows:

Messrs. Cooper, Clemans & Lamb, Cedar Rapids, Iowa — Gentlemen: Your letter, written in behalf of Carrie L. Robins with a sworn statement of Mrs. Robins attached, showing the particulars as to the death of her husband, J. A. Robins, late of Cedar Rapids Camp, 5348, of our Order, has been referred by our Head Clerk to me, together with the office files in the case.

Our records show that the original certificate No. 495673 was issued to J. A. Robins on April 18, 1899, the proceeds thereof being payable to Carrie L. Robins, related to him as his wife. On the 14th of July, 1902, Mr. Robins conforming to all the requirements of our By-laws, except one, made a change in the name of the beneficiary to whom he desired the proceeds of his certificate paid, and named Mrs. Clara Houstman as his beneficiary. He did not surrender the benefit certificate, as our By-laws require, but stated that it was, out of his possession and beyond his control and in the possession of his wife, his former beneficiary, and that she had eloped with another man. Upon this statement, the Order did not insist upon the surrender of the benefit certificate, but issued him a new benefit certificate in lieu thereof, in which Mrs. Clara Houstman was named as his beneficiary.

All of the proofs of death have been made by Mrs. Houstman, showing the good standing of the neighbor at death, and that she holds the latest issued certificate, and she makes claim for the proceeds thereof. The money has not, as yet, been paid, and if there is going to be a contest at law over it, I should be glad to be advised at the earliest opportunity of that fact.

I do not think that your client can maintain a claim for the money. She has no vested interest in the certificate

during the lifetime of her husband.    Her interest was merely
an expectancy, dependent upon his dying in good standing
in the order, and also upon his having made no change in
the beneficiary under his contract prior to his death.    He
had a right to change his beneficiary at any time, under our
by-laws, by conforming to certain requirements of the Order.
He conformed to all of these requirements, except one, and
the Order waived that, as it had a right to do, by issuing
a new certificate with the new beneficiary named therein.

I would like to have your views on the matter, if not
in accord with mine, as a discussion by correspondence of
the points involved maly straighten the matter out without
the necessity of litigation.

On the 13th of October, 1902, the plaintiff's attorneys
wrote a letter in answer to this one, in which they gave their
reasons for claiming that the plaintiff was the rightful bene-
ficiary and entitled to the amount of her certificate, and in
which they expressed the hope that the appellant would not
paly the money to Mrs. Houstman on the second certificate,
but would pay the sum into court, to be distributed upon a
final determination of the case.    The receipt of this letter
was acknowledged by Mr. Johnson's clerk on the 15th of
October, in a letter in which she stated that he was then at-
tending a meeting of the board of directors of the appellant
at Rock Island, Ill.    On the 4th of November, Mr. Johnson
himself wrote in answer thereto, and, after expressing his
legal views on the questions discussed by the plaintiff's attor-
neys in their letter, he concluded thus:

All that we want is to be protected in the payment of
this money, so that we will not have to pay it twice.    We
certainly will not pay this money out unless on an order
of court.    If you want to sue us, we will answer and ask
to have Mrs. Houstman made a party.    If she sues us,
we will do the same by you.    If neither of you sue us,
whenever we get tired of holding the money, we will com-
mence a suit ourselves and ask to have you both brought in.

On November 7th Mr. Johnson was notified by letter

that suit on the certificate would be commenced at once, and on the 19th of the same month he was notified that it had been commenced. Notice of suit was sent to the appellant, at Rock Island, Ill., and by its officers forwarded to Mr. Johnson, at Peabody, Kan., who later acknowledged the receipt thereof in a letter to the plaintiff's attorneys. On the 29th of November a copy of the petition was sent to Mr. Johnson, and early in January, 1903, the appellant filed its answer and cross-petition, in which it pleaded the facts relative to the issue of a new certificate naming Mrs. Houstman as the beneficiary, and its inability to determine to whom the money should be paid. It asked that Mrs. Houstman be made a party to the suit, and that it be permitted to pay the amount of the certificate to the clerk of the court, and be thereupon released from liability to either party. In January, 1903, after it had pleaded, the appellant, on the request of the plaintiff, furnished from its office in Rock Island a certified copy of the second certificate, and the application on which it was issued, and also a statement of the assessments paid as shown by the records. Early in April, 1903, the plaintiff pleaded to the defendant's cross-petition, and filed a cross-petition against Mrs. Houstman. Mrs. Houstman defaulted, and thereafter a decree was prepared by the plaintiff's attorneys and submitted to Mr. Johnson, who approved the same in writing, and on the 24th of April, 1903, judgment was rendered against Mrs. Houstman and the appellant in accordance with the decree so approved, and Mr. Johnson then ordered the payment of the judgment. On the 4th of May, 1903, Mr. C. W. Hawes, the head clerk, wrote to the plaintiff's attorneys that the judgment could not be paid, because the claim of Mrs. Houstman under the second certificate had been audited by the board of directors on the 14th of August, and paid on the 18th of the same month. On the 20th of May, 1903, the appellant made application to have the decree vacated. The motion was overruled, and this appeal is from that order.

It is contended that the judgment should have been vacat-ed because of mutual mistake and unavoidable casualty and misfortune, and because of newly discovered evidence. Taking these claims in their inverse order, we observe that the newly discovered evidence relied on is not specified in the motion for a new trial or in argument, but we infer from the latter that the appellant re-. lies on Mr. Johnson's discovery that payment had been made to Mrs. Houstman.   It is probably true that he did not know of such payment until after judgment, but the appellant had paid the claim through regular channels and in the usual way, and if its officers, whose duty it was to disclose all of the facts of the case to its legal adviser, neglected to do so, it cannot now successfully assert that the delayed information to him constituted newly discovered evidence entitling it to a new trial.   This proposition is so self-evident that we need cite no authorities in support thereof.

*1. NEW TRIAL: newly discov- ered evidence.*

We have given an unusually full history of the case, believing that an understanding of the facts will furnish the best argument that can be made in support of the decision of the trial court.   The record fails to show an unavoidable casualty or misfortune, or any mis-take not directly attributable to the gross negli-gence of the appellant.   All of the facts relative to the pay-ment of the claim to Mrs. Houstman were known to the ap-pellant before the claim of the appellee was made on the 8th of September, 1902.   It was also fully advised of the ap-pellee's claim, and of the probable conflict between the two beneficiaries, before the suit was in fact brought, and for-warded the plaintiff's proof of death and letter to its attorney at Peabody, Kan.   Later it was duly served with notice of suit, which its home office also sent to its attorney; and still later the home office, when called upon to do so by its attor-ney, furnished the plaintiff certified copies of the second cer-tificate, and the application on which it was issued.   And yet all of these transactions did not suggest to the appellant's

*2. NEW TRIAL: inadvertence or mistake; evidence.*

executive officers in Rock Island that the certificate issued to Mrs. Hcustman had been paid, and that it might be well to so advise its attorney. No excuse for not doing so was presented — not even the excuse that the matter had been forgotten. That a new trial should not be granted when the party has been so grossly negligent is fundamental. *Church v. Lacy,* 102 Iowa, 235; *Ennis v. Building Ass'n,* 102 Iowa, 520; *White v. Poorman,* 24 Iowa, 108.

Whether the appellant had a good defense to the action, we need not determine. The order refusing to vacate the judgment was clearly right, and it is *affirmed.*