JOE DOLLISTER, Appellee, v. W. J. PILKINGTON, Appellant.

JUDGMENT: Opening or Vacating—Defaults—Notice of Time and Place of Holding Court.   A party must take notice of the time and place of holding court and of the position of his case on the calendar and the state of the calendar.

JUDGMENT: Opening or Vacating—Defaults—Sufficiency of Show-
2 ing—Negligence of Party. Where a party knew that, in reply
to his motion, a cost bond had been filed, and knew that his at-
torney had withdrawn from the case and had turned over the
papers to him, and employed no counsel, took no action, did
nothing to protect his interests thereafter, and had no reason
to expect further courtesy to him by opposing counsel, *held* that
he was not entitled to have a default judgment set aside, en-
tered 31 days after the filing of said cost bond.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF,
Judge.

MARCH 20, 1919.

APPEAL from the action of the court in refusing to set
aside default.—*Affirmed.*

*Hunn & Jones,* for appellant.

*Dunshee, Haines & Brody,* for appellee.

GAYNOR, J.—This is an appeal from the action of the
court in refusing to set aside a default judgment entered
on the 9th day of November, 1917.

In the original action in which the judgment was en-
tered, the plaintiff, who was a citizen of Racine, Wiscon-
sin, claimed that, about the year 1910, the defendant was
the owner of 200 acres of land in Howell County, Missouri;
that, in the year 1913, he subdivided this land into 10-acre
tracts, and solicited purchasers for the same; that, on the
29th day of October, 1913, plaintiff purchased from the de-
fendant one of these 10-acre tracts, and paid to the defend-
ant down on the purchase price the sum of $750 in cash,
and executed to the defendant his four promissory notes,
three for $500 each, and one for $750; that, to induce plain-
tiff to purchase the same, the defendant falsely represent-
ed that these 10-acre tracts had been sold at $2,600 apiece,
that they had peach orchards on them, and that these or-
chards yielded between $600 and $700 an acre over and

above expenses; that said representations were not true; that the defendant knew they were not true; and that they were made for the purpose of deceiving the plaintiff; that they did deceive the plaintiff, and he was induced to make the purchase aforesaid; that the plaintiff was entirely unacquainted with that portion of Missouri in which the land was situated, and had no knowledge whatever of the value of land in that vicinity; and that he relied wholly upon the statements of the defendant, who, at that time, was editing a retail merchants' journal, circulated among merchants, among whom was this plaintiff; that defendant had also been engaged in the business of delivering addresses before various retail merchants' associations over the country, and had, by reason of his addresses, and of the fact that he was the owner and editor of a merchants' trade journal, attained a high standing among the retail merchants throughout the United States, and with this plaintiff; that the land conveyed to the plaintiff was practically worthless. He prayed that the contract be set aside, and that he have judgment for the amount paid the defendant, and that a decree be entered, enjoining the defendant from transferring any of the notes given him by the plaintiff.

This petition was filed on the 28th day of April, 1916. Due notice of the filing of the petition was served on the defendant. On the 2d day of May, 1916, the defendant appeared by W. A. Graham, an attorney, and asked for time to plead. Time was granted, and no further action taken by the plaintiff then to enforce his claim.

On June 20, 1916, the president of the United States called on the National Guard of Iowa for service on the Mexican border. This attorney, Graham, was then a captain in the Third Infantry, and on that day was ordered to Brownsville, Texas, arriving there on July 24, 1916, and did not return to Polk County until January, 1917. During his absence, this case remained *in statu quo*, on the request of

defendant's attorney, made in this way: In the latter part of August, or early in September, Mr. Graham asked plaintiff's attorney that the cause remain *in statu quo* until his return, to which the attorney replied, "All right." Graham, however, returned, as said before, on the 10th day of January, 1917, and was mustered out of service on the 20th day of January, 1917, and resumed practice shortly thereafter. No talk was had with plaintiff's attorney about this case until after the beginning of the March term, 1917, when plaintiff's attorney requested the filing of an answer, saying that he would like to try the cause. Defendant's attorney replied that he was not yet able to get the run of things; that, during his absence, his brother, his partner in the law business, had removed their office to another building, and that his papers had been misplaced. Shortly thereafter, in the latter part of the March term, attorneys for the defendant consulted with defendant about trying the cases, there being two cases, one in law and one in equity. The defendant thereupon directed his attorney to file an application for a cost bond, to which the attorney for the defendant demurred, because of the courtesy that had been extended to him by plaintiff's attorney. Defendant, however, insisted, and a motion was drawn and filed in one of the cases. During the summer, plaintiff's attorney twice asked defendant's attorney to file answer. Defendant's attorney proposed to him to file his answer immediately, and proposed to set up in his answer all the facts and matters relied upon, so that the merits of the case could be determined on demurrer. To this end, he obtained from plaintiff's attorney, all the papers necessary to do so, and started to prepare the answer, but informed counsel for the plaintiff that he would not file it until the cost bond was furnished.

On the 20th day of July, defendant's attorney was appointed major and judge advocate of the Reserve Corps,

and on August 7th, was directed to report at Washington for duty. He left on August 9th. Before leaving, however, he turned over to the defendant all the papers in his possession, including all the papers in this case, and then phoned to the clerk of the district court, and found that his application for a cost bond had not been filed in the equity case (the suit here in controversy). He then took a copy of it, and told defendant to file it, which was accordingly done. After Mr. Graham had turned over all the papers to the defendant, the defendant said that he would have to get someone else to look after the matter; that he would get Mr. Hunn. He was told that that would be all right. The attorney went to Washington, and was ordered back to Des Moines on the 25th day of August as division judge advocate, which position he occupied thereafter at Camp Dodge. Before leaving for Washington, he met plaintiff's attorney, who said, "What about the Dollister case, now that you have gone back into the army?" This attorney replied:

"I have turned all the papers over to the defendant, and it is my understanding that he will have Hunn look after it. You see Hunn about the further progress of the case. I don't expect to have any further connection with it."

Plaintiff's attorney replied, "All right."

It appears that defendant did not employ Hunn or anyone to represent him, after the departure of Mr. Graham. A cost bond was filed by the plaintiff in this case, in pursuance of the motion, on the 9th day of October, 1917. No further appearance was made for the defendant, and no pleading was filed; and on the 3d day of November, the plaintiff filed a motion for a default, which was sustained; and on the 9th day of November, 1917, judgment and decree was entered in favor of the plaintiff, to which a supplemental decree was filed on the 12th day of November, 1917. Nothing further was done by the defendant until the 5th

day of December, 1917, when this motion to set aside the default and judgment was filed.

This record discloses these ultimate facts:

The original petition in this case was filed on the 28th day of April, 1916.  Due notice was served for the May term.  The cause being in equity, that was not the trial term, but the term for making up·the issues.  Defendant entered an appearance by attorney.  Through courtesy to the attorney, it was not insisted that the issues be made up at that term.  While the case so stood, it passed the May term without issues' being joined.  The next was the September term, at which the plaintiff would not only be entitled to have the issues made, but the cause set down for trial.  However, on June 20th, defendant's attorney·was called into the service of the United States, and ordered to the Texas border.  On his request, the attorney for the plaintiff consented that the case might remain *in statu quo*, without pleading, until the return of this attorney.  This courtesy was undoubtedly extended because of the fact that the opposing counsel had been called into the service of his country.  Defendant's attorney returned from the Texas border on the 10th of January, and was mustered out of service on the 29th day of January.  The plaintiff still held in abeyance his right to press his suit, until the March term, 1917.  At this time, the attorney for the defendant had returned, and was engaged in active practice.  Plaintiff's attorney requested him to file his answer;  informed him that he desired the cause to be tried.  An excuse was made that, in the absence of defendant's attorney, the papers had been mislaid.  Defendant's attorney, however, consulted with the defendant about trying the cause, and the defendant, notwithstanding the courtesy which had been extended to him by plaintiff's attorney, insisted on the filing of a motion for a cost bond.  This was done over the protest of his own attorney.  It appears that a motion was then filed in one

of the suits, but was not filed in this particular suit. Still, the plaintiff's attorney did not insist upon his rights. On July 20th, more than a year after the cause had been commenced, and several months after the attorney had returned from the Texas border, he was again called into the service of the United States, but did not leave until the 9th of August. Just before leaving, he discovered that the motion for a cost bond had not been filed in this case. It was then filed. He turned all the papers over to the defendant, and told him he would have to employ another attorney, to which the defendant acceded. The cost bond was filed by the plaintiff, in pursuance of this motion, on the 9th day of October. No appearance was then made for the defendant. He employed no counsel to represent him. He knew that his attorney had turned all the papers over to him, and had withdrawn from the case. The defendant then took no action until the 3d day of November, when the motion for a default was filed. Action was still delayed until the 9th day of November, when plaintiff took decree and judgment. Then, for the first time, defendant employed his present counsel to represent him, and on the 5th day of December, filed a motion to set aside the judgment.

It has been frequently said by this court, and it is a rule necessary to be observed in order that the work of the court may be expedited and the interests of parties litigant properly protected, that the party and his attorney must take notice of the time and place of holding court, and the position of his case on the calendar, and the state of the calendar. He is presumed to know and is held to know what is necessary to protect his interests. As said in *Williams v. Wescott*, 77 Iowa 332, 339:

1. JUDGMENT: opening or vacating: defaults: notice of time and place of holding court.

"A due regard for the dispatch of business requires of litigants a prompt attention to the preparation and prosecution of their causes."

Even conceding that the courtesy extended by plaintiff's counsel to defendant's counsel extended as late as the March term, 1917, and that plaintiff could not, in good faith, have insisted upon a default for want of plea, yet it appears that, from March until August 9th, this attorney, Graham, was here; his attention had been called to the condition of the record; he knew that the plaintiff was insisting upon a trial; yet no papers were filed to protect the defendant against adverse action in the court. It is claimed that a motion for a cost bond was prepared to be filed in this case, but it appears it was not filed until some time in August, 1917; that, after the filing of this motion, defendant was informed that his counsel was about to depart for service in the government of the United States. All the papers were turned over to him. He knew that he had no right to rely upon further forbearance from plaintiff's counsel, and yet he took no action. He was charged with notice that the cost bond was filed on the 9th of October, 1917; yet he took no action, employed no counsel, and did nothing to protect his interests.

2. **JUDGMENT:** opening or vacating: defaults: sufficiency of showing: negligence of party.

A review of this record satisfies us that plaintiff's counsel acted in good faith with the defendant in this case; that the courtesy and indulgence extended were far beyond what defendant could rightfully ask or expect; that, for a month before the judgment was entered, defendant knew that he filed a motion for a cost bond, and a cost bond had been filed. He knew his attorney had gone back into the service of the United States. He knew that his attorney had retired from the case. He knew that it was essential to procure further counsel to protect his interests. He had no reason to expect the extension of further courtesy to him by plaintiff's counsel. The plaintiff was clearly within his right in taking judgment against the defendant. De-

fendant has nothing to complain of on the part of counsel for the plaintiff. Whatever he suffers of wrong in this case is due to his own negligence and carelessness, and it is axiomatic that a man cannot predicate right to relief upon his own negligence.

Though we are not called upon to determine the merits of this controversy, we think the plaintiff has made a very satisfactory showing of merits. At the time the decree and judgment were entered, the plaintiff was here with his witnesses. One of the witnesses was Davidson, who had charge of the property involved in this suit for the defendant, who testifies in the suit for the plaintiff.

Upon the whole record, we think the court was right, and its judgment ought to be, and is,—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.