IOWA CORD TIRE COMPANY, Appellant, v. VANCE J. BABBITT, Appellee.

APPEAL AND ERROR: Reservation of Grounds—Necessity. Judgments which are regular and within the jurisdiction of the trial court may not be reviewed on appeal when the record reveals no evidence, no exceptions, and no motion for new trial.

JUDGMENT: Opening Default—Negligence of Attorney. An attorney who receives from opposing counsel an unqualified notification to the effect that all forbearance relative to a pending action is terminated, and that said action will be presented to the court at the earliest opportunity, and who fails for some six weeks to plead to said action or otherwise to appear therein, is guilty of a negligence which will be imputed to his client, and which will preclude the setting aside of a default judgment.

*Appeal from Winnebago District Court.*—JOSEPH J. CLARK and M. F. EDWARDS, Judges.

MARCH 13, 1923.

Two actions are consolidated and submitted together. One is an appeal from a judgment by default. The other is an appeal from an order of the district court refusing to vacate and set aside the said default in said original action.—*Affirmed on both appeals.*

*Chester J. Eller, Tom Boynton,* and *L. E. Francis,* for appellant.

*Thompson, Loth & Lowe,* for appellee.

FAVILLE, J.—I.   On or about March 13, 1919, the appellee subscribed for certain shares of stock in the appellant company. The subscription was obtained by one of the stock salesmen of the appellant.   Said subscription contract was as follows:

"Subscription for Stock.

"Fully paid and Nonassessable            Par Value $25.00. "To Iowa Cord Tire Co.:  I hereby subscribe for 16 shares preferred and 8 shares common of the capital stock of the Iowa Cord Tire Co. (Incorporated under the laws of Iowa) agreeing to pay therefor at Des Moines, Iowa, $25.00 per share, upon the following terms:  Cash $150.00 Note for $450.00 Sept. 1st. It is understood that no representations other than those herein set forth shall be recognized or considered, and that all payments shall be made by check or draft payable to Iowa Cord Tire Co.  Executed at Forest City this 13th day of Mch., 19... This subscription subject to approval of the board of directors.

"Vance J. Babbitt."

On the back of said stock subscription appeared the following, in writing:

"I hereby agree to dispose of the stock as shown on the opposite side of this contract at a profit of $2.50 per share at any time after ninety days if dissatisfied, or money refunded at any time within that time.  Iowa Cord Tire Co., By E. Willoughby, Agt. for County."

About one year after the execution of said contract, the appellee notified the appellant that he was dissatisfied with his stock subscription, and demanded a return of the $600 he had paid under said written contract.   Correspondence was had between the parties and their attorneys, which will be referred to more in detail hereafter.   Subsequently, action was commenced by the appellee, to recover the said sum of $600, with interest.   Service of the original notice in said action was accepted by the appellant. The petition was duly filed, and judgment was obtained by default in said proceeding on the 12th day of September, 1921,

1. APPEAL AND ERROR: reservation of grounds: necessity.

said judgment being entered for the said sum of $600, with interest and the costs of said action. No exceptions were taken by the appellant to the judgment. No motion was made for a new trial, no evidence was preserved of record of the trial of said action, and no bill of exceptions was filed in said cause. The appeal is from the judgment so entered by default. The court had jurisdiction of the subject-matter and of the defendant in said action. No irregularity is claimed in regard to the jurisdiction of the court. Matters are now urged on appeal which might have been urged by way of defense to the appellee's claim in said action, but these matters cannot now be considered by us in this appeal. The petition stated a cause of action. The original notice was in proper form, and duly served in proper time. The trial court found the proof sufficient to sustain the allegations of the petition, and entered judgment accordingly. We cannot review such judgment so entered by default, where no bill of exceptions has been filed, no evidence preserved, and where the proceedings are all regular, and within the jurisdiction of the court. Until the judgment so entered is vacated or set aside by proper proceeding, it must stand as a verity. *Belknap v. Belknap*, 154 Iowa 213.

II. Appellant, however, sought to set aside said judgment by default, by a petition filed in the lower court. An order was entered by which the court refused to vacate and set aside said judgment. This brings to our consideration the second proposition involved in the consideration of these cases.

2. Judgment: opening default: negligence of attorney.

As previously noted, the stock contract was entered into on March 13, 1919. On March 2, 1920, the appellee wrote a letter to the appellant, referring to the subscription for stock and expressing his dissatisfaction therewith, and requesting a remittance for the amount paid by him. On March 6, 1920, the appellant replied to said letter, refusing to recognize the conditions claimed by the appellee, and claiming that appellant had paid a commission to the salesman on said sale, and refusing to recognize any obligation under the written contract indorsed on the subscription. On March 8th, the appellee replied to this letter, threatening to commence action against the appellant. Other correspondence passed between the parties, and on Janu-

ary 7, 1921, the attorneys for the appellee wrote the appellant in regard to said matter, and correspondence was thereafter exchanged between the counsel for the appellant and counsel for the appellee. This correspondence was quite extensive, and it appears therefrom that the attorneys discussed the facts and the law pertinent to the matter in hand, and exchanged briefs on the subject. On March 8, 1921, counsel for appellee sent an original notice to counsel for the appellant, with the request that the latter obtain an acceptance of service thereon. It appears also that there was a conference between the attorney for the appellant and the attorney for the appellee at Des Moines, in April, 1921, at which time counsel for the appellant delivered the said original notice to counsel for the appellee, service of said notice at said time having been duly accepted by the appellant. The petition in said action had been filed March 11, 1921. On April 26, 1921, counsel for appellee wrote counsel for appellant as follows:

"We have not decided definitely just what steps we will take and it is possible that after we have an opportunity to investigate the matter a little further we will institute different proceedings, as we have been advised and requested to do by some other people who seem to be interested. Before doing anything further with our suit instituted here we will advise you as we have not definitely decided whether we will continue the same or proceed in an entirely different manner."

Other correspondence passed between the attorneys for the parties, in the months of April, May, and June of 1921, and on July 28, 1921, the attorneys for the appellee wrote to the attorney for the appellant as follows:

"Nearly two months ago you wrote us to the effect that you would forward us the Babbitt letters, or copies thereof, which you have referred to two or three times in your correspondence as indicating that Babbitt raised the question of this contract with the company before he paid for his stock. We have been postponing any further action in this connection until we received this correspondence, which you say in your letters of May 28th and June 4th that you expect to forward immediately. We don't seem to be getting anywhere in this connection and this is to advise you that we expect to proceed with.

our suit and shall expect you to take such steps as you see fit to defend yourself, but that we hereby withdraw our agreement to withhold any further action, and you will therefore govern yourself accordingly. In our opinion we have a valid claim that is entitled to consideration and we shall get it before the court at the very earliest opportunity.''

On August 5, 1921, the attorney for the appellant replied to said letters, as follows:

''I received yours of July 28, 1921. I owe you an apology for not answering your letter sooner with respect to the correspondence, but sometime the latter part of June I had to be out of the office due to an operation and it laid me up about four weeks so that I practically attended to no business of any kind and since that time have been attempting to catch up. I had recently, however, thought of my obligation to write you relative to the correspondence referred to. The advice I had received was somewhat confused with their correspondence and I find that the stock was paid for in November, 1919, and the letter written in March, 1920. The letter of August, 1920, thereafter reads as follows, to wit: 'Please ship me the following order as soon as possible in accordance with my ''Dealers' Co-Operative Sales Plan'' which I received at the time I subscribed for stock. 1 30x3½ CL non-skid Wrapped Tread Fabric casing. 1 30x3½ CL non-skid Trade Maker casing. Yours very truly, [Signed] V. J. Babbitt.' This letter, of course, indicates that he has waived all claims on his stock and elected to keep the same free from any claim as against the Iowa Cord Tire Company as his Dealers' Co-Operative Sales Plan was a part of his purchase and, of course, he would not have any right to his Dealers' Co-Operative Plan and make orders thereunder unless he was a stockholder. I trust that this answers your letter. As far as appearing to the case, that matter was dropped, as you said when you were here before you did not know what you would do and your letter thereafter so stated that you did not know what proceedings you would take up. However, if you have changed your mind and now desire to contest the case you better prepare an original notice for your next term of court and forward to me and I will have it served. Then I can make my appearance and contest jurisdiction of the court or other-

wise, as in my judgment seems best to protect the company. I would not want to consent to jurisdiction by agreement or otherwise under the circumstances. I think it would be better to forward me notice covering the term in which you want to file the action.''

No reply was made to this letter.

No further correspondence appears to have passed between the parties in any way until after the default had been entered and judgment rendered on September 12, 1921. The petition to vacate said judgment by default was filed September 29, 1921, and the decree dismissing said petition was entered January 21, 1922.

Did the court err in refusing to set aside said default? Was there a sufficient showing of casualty and misfortune to justify reopening the case? Was appellant's attorney negligent? A large amount of correspondence had passed between the attorneys. There had been legal discussions, and propositions and counter propositions, and while the correspondence had been friendly and courteous, nevertheless the parties had been dealing with each other at arm's length.

Much dependence is placed upon the letter of April 26, 1921, wherein appellee's attorney said:

''Before doing anything further with our suit instituted here we will advise you as we have not definitely decided whether we will continue the same or proceed in an entirely different manner.''

But this can scarcely be construed as being sufficient to put opposing counsel to sleep. Appellee's counsel distinctly stated, ''Before doing anything further with our suit instituted here we will advise you;'' and later on, they did advise him. In the letter of July 28, 1921, counsel for appellee definitely stated:

''We don't seem to be getting anywhere in this connection and this is to advise you that we expect to proceed with our suit and shall expect you to take such steps as you see fit to defend yourself, but that we hereby withdraw our agreement to withhold any further action, and you will therefore govern yourself accordingly.''

Language could scarcely be used that would more aptly sound the promised warning. The letter of April 26, 1921, in-

formed counsel that, before doing anything further with the suit, they would advise him, and on July 28th the notice came. It was not couched in ambiguous terms. It was clear, definite, and specific. It said:

"We expect to proceed with our suit and shall expect you to take such steps as you see fit to defend yourself * * * we shall get it before the court at the very earliest opportunity."

The warning signals were ample. Appellant's counsel should have looked and listened. He did nothing thereafter in the matter until August 5th, when he wrote the letter previously quoted.

It is contended that appellant suffered an unavoidable casualty by reason of the fact that, in the month of June, 1921, his counsel was compelled to submit to an operation, and was out of his office and unable to work for a period of about four weeks. This, however, had all occurred before he received the warning letter of July 28th. At that time he was back at work, and replied to that letter on August 5th. Surely there was no unavoidable misfortune or casualty here. Appellant's counsel received the letter of July 28th at a time when he was able to attend to his business affairs, and he acknowledged receipt of that letter. True, in his answer to the letter he evidently sought to open negotiations again, and to "postpone the evil day" in sight. But he received no reply to said letter, and more than a month expired thereafter without any further communication between the parties, before the default was taken. It can scarcely be contended that the letter of July 28th was a trap to ensnare the unwary. It was quite the opposite. It was so clear and unmistakable that he who runs might read. It certainly was not a casualty or misfortune recognizable at law, that appellant's counsel received no reply to his letter of August 5th. The very silence should have been ominous. If counsel for appellant was depending upon appellee's counsel, he had no right to depend on anything different from the explicit declaration in the letter of July 28th, that:

"We hereby withdraw our agreement to withhold any further action and you·will therefore govern yourself accordingly * * * we shall get it before the court at the very earliest opportunity."

This was not an invitation to an armistice. It was a declaration of war.

We see no escape from the conclusion, under the record in this case, that the failure to defend in the original action was due to the negligence of appellant's attorney in failing to enter an appearance or file a pleading in the then pending case.

Was this "an unavoidable casualty or misfortune," within the meaning of Code Section 4091?

It has been held that the mistake of an attorney, even though it relates to a matter of which he is required by law to take notice, may afford good ground for excusing a default. *Jean v. Hennessy*, 74 Iowa 348; *Barto v. Sioux City Elec. Co.*, 119 Iowa 179. Here is not a case, however, where there was a mistake or misunderstanding on the part of the attorney, or an accident that caused him to fail to give the matter proper attention after receiving the letter of July 28th. Undoubtedly he anticipated that his letter of August 5th might open new negotiations in the matter; but when no word was received in reply thereto for six weeks, and in the meantime court was about to convene in the county where suit was pending, ordinary care would have suggested the entry of an appearance, the filing of a pleading, or some further communication with counsel for appellee. The use of telegraph and telephone is so ready and so convenient that even a very busy lawyer is able to keep advised of the status of legal proceedings at places remote from his office. We must hold that appellant's counsel was negligent in the matter.

It is contended, however, that, if the attorney for appellant was negligent, rather than mistaken or unfortunate in the matter, such negligence is not to be imputed to his client. Right here lies the crux of the case.

It is not easy to reconcile the cases, because of the difference in fact situations and the difficulty in always being able to draw the line between excusable mistake and actual negligence in this class of cases. In *Church v. Lacy & Co.*, 102 Iowa 235, we held that the neglect of counsel was not a sufficient ground for setting aside a default under the statute. In *Hueston v. Preferred Acc. Ins. Co.*, 161 Iowa 521, we said:

"It is a rule well settled, and necessary for the orderly and

timely discharge of the business of the courts, that a client is charged with the neglect of his attorney. This general rule is stated in many of our decided cases, among which are *Church v. Lacy & Co.*, 102 Iowa 235; *Sioux City Mfg. Co. v. Boddy*, 108 Iowa 538; *Barto v. Electric Co.*, 119 Iowa 179."

In *Klepfer v. City of Keokuk*, 126 Iowa 592, we said:

"While negligence pure and simple on the part of the defendant or his attorney will not be sufficient to excuse a default, yet, short thereof, many circumstances and conditions may be accepted when shown, although not wholly blameless."

As bearing on the question, see, also, *Williams v. Wescott*, 77 Iowa 332; *Sioux City Vinegar Mfg. Co. v. Boddy*, 108 Iowa 538; *Byrnes v. American Mut. Fire Ins. Co.*, 114 Iowa 738; *Robins v. Modern Woodmen*, 127 Iowa 444; *Andres & Co. v. Schlueter*, 140 Iowa 389; *Bradshaw v. Des Moines Ins. Co.*, 154 Iowa 101; *Dollister v. Pilkington*, 185 Iowa 815.

We think that the appellant failed to establish such unavoidable casualty or misfortune as entitled it to have the judgment by default vacated and a new trial granted. In cases of this kind, a large discretion is vested in the trial court. *Chambliss v. Hass*, 125 Iowa 484; *Klepfer v. City of Keokuk*, supra; *Farmers Exch. Bank v. Trester*, 145 Iowa 665. The facts in this case are clearly distinguishable from the facts in the case of *Clarke v. Smith*, 192 N. W. 136.

We do not find an abuse of such discretion in this case. The judgment and the order appealed from in the two cases considered are each affirmed.—*Affirmed on both appeals.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.