BESSIE SVOBODA, appellee, v. JOSEPH C. SVOBODA, by LOREN M. HULLINGER, JR., administrator and substituted defendant, appellant.

No. 48337.

(Reported in 60 N.W.2d 859)

NOVEMBER 17, 1953.

L. M. Hullinger, James H. Smith and L. M. Hullinger, Jr., all of Cedar Rapids, for appellant.

Edgar L. King, of Cedar Rapids, for appellee.

BLISS, J.—Bessie and Joseph C. Svoboda were married August 1, 1929, and the marital relation continued until shortly before October 31, 1951, when plaintiff filed petition for divorce and the custody of their two sons, ages about fifteen and eleven years. Plaintiff also prayed for support for the two children, title to all property of the parties and for general equitable relief. The alleged grounds for divorce were cruel and inhuman treatment endangering her health and life, and including drinking to excess and using vile language toward her. The original notice was personally served on the defendant on November 2, 1951. He filed no answer or other pleading and appeared neither personally nor by any attorney or other person. For this lack of appearance, on November 30, 1951, defendant was declared to be in default, and decree was that day rendered and duly entered in favor of plaintiff. The decree stated that: the court, after examination of the original notice and the return of service endorsed thereon, found that defendant had been duly and personally served with notice as provided by law; and, plaintiff appeared in person and by attorney, and the court being fully advised by the pleadings and proof found· and decreed that plaintiff was entitled to a decree of divorce and for such other relief as prayed for in her

petition, other than defendant's clothing and personal effects and an automobile which were awarded to defendant.

On December 5, 1951, defendant, Joseph C. Svoboda, filed a motion, pursuant to rule 236 of the Iowa Rules of Civil Procedure, to set aside the default and decree, upon grounds of mistake, inadvertence, surprise, excusable neglect, and for fraud and deceit practiced on the court and upon defendant by the plaintiff. Defendant also alleged that: on November 3, 1951, he employed and consulted Attorney L. M. Hullinger, Sr., and was by him advised that he had a good defense to his wife's action, and said attorney was instructed to do all things necessary in defendant's behalf; within a few days thereafter defendant and his wife agreed to a reconciliation, and at once commenced to live together and cohabit as husband and wife, and continued to do so thereafter up to and including the date of the rendition of the decree and the date of filing the motion; defendant informed his attorney of the reconciliation and the resumption of marital relations, and that it would not be necessary for the attorney to further act or proceed with the defense in the divorce proceeding; and thereafter plaintiff by deceit and fraud practiced on the defendant and the court procured the default to be declared and the decree to be rendered, without opportunity on the part of defendant to defend and to present the meritorious and sufficient legal defense which he had to plaintiff's alleged cause of action. With this motion defendant filed an answer to plaintiff's petition in the divorce suit.

On December 10, 1951, plaintiff filed a resistance to said motion denying the allegations thereof and alleging that defendant had personal knowledge of every stage of the divorce proceeding, and on the day before the decree was entered the defendant had urged her to go ahead and get the divorce. On December 12, 1951, defendant filed a reply denying the affirmative allegations of the resistance.

On December 29, 1951, hearing was had upon the motion to set aside and the resistance. Defendant testified in support of the allegations of his motion and reply to the resistance. He testified that: he and his wife together owned a home worth about $8000 incumbered by a $4200 mortgage, and a tavern worth

about $8000, for which an offer of purchase for $5600 had been made and withdrawn, and another party had offered $4500. When asked if he received any papers from his wife or her attorney or the court, he answered: "Yes, I did receive something after the original notice, but I don't know what it was though because I didn't read it. I can't see well enough to read it. * * * I don't see too well with my glasses on. I can't get used to bifocals. * * * I didn't move out of the house * * * when I received the original notice. I didn't move out on the day she received the divorce either, but she did tell me to move out then. * * * I was really surprised when I saw the papers about the divorce. I didn't do anything. I continued to do my tavern work. At that time it didn't make too much difference to me one way or another." Defendant also testified that he first consulted his attorney, Mr. Hullinger, Sr., about three days after November 2, 1951, the date the original notice was served on him, and the second time he talked to him was about twenty days later when he told Mr. Hullinger that he would let the case go as his wife was going to drop it. He testified that on this call upon his attorney he paid him. The attorney's receipts show the payments were made to him on December 3 and 4, 1951.

Mr. Hullinger, Sr., corroborated defendant with respect to his employment as attorney and that he took no action in his behalf because a few days after his employment defendant told him he and his wife were going back together and he need not defend any further. Defendant introduced no other testimony at this hearing.

Plaintiff testified that: she lived at 1309 C Street S.W., Cedar Rapids, with her two sons, and that after she filed her petition in the divorce action she did not cohabit with her husband and never had any talk with him to the effect that they would go back together as husband and wife, or that there would be any reconciliation, and that she had not slept with her husband for over a year; she had been taking care of her sons and providing for their needs, and also operating the tavern because her husband was not able to do so as he was an alcoholic, a matter over which they had quarreled for years, and for which he entered a hospital for treatment; the home was mortgaged to buy the tavern; he had not been paying any support for the children.

It was provided in the decree that defendant pay the plaintiff $7.50 a week for each child until they reached their majority. She testified that after she had paid the tavern bills from the money in the cash register, defendant accused her, in front of the customers, of robbing him again—"that hurt me. I couldn't stand any more so I talked with him in the kitchen. I told him to let me get a divorce and not threaten my life as he had before. That was the conversation we had. Then I said, please let me get a divorce. I can't go through with it any more. He said 'go ahead and get the divorce', and so the next morning I called Mr. King [her attorney] to go through with it. That was the next day after the conversation, November 30th."

Plaintiff was corroborated by the witnesses, Mrs. Rogers and Mrs. King, who were respectively cook and waitress in the Svoboda tavern in November 1951, and before and after said month. They heard the conversation between Mr. and Mrs. Svoboda the day before November 30, 1951, when the decree of divorce was granted, and heard Mrs. Svoboda tell her husband she was going to get the decree, and heard him reply and tell her to do so, as he did not care. One of these ladies testified that on this day she heard Mrs. Svoboda telephone her attorney that she would arrange to be at the courthouse the next day.

The eldest son of the parties also corroborated his mother with respect to the separate bedrooms in which his father and mother slept after the petition for divorce was filed.

It was alleged in defendant's motion that he was then filing an answer in the divorce suit, and that he was going to file a cross-petition for divorce.

When plaintiff announced that she had rested, the court stated: "From what I have observed here * * * if the default is set aside I think it will culminate in a divorce. Rather than go through all of the machinery again, can't you patch up your troubles?" After stating to Mr. Hullinger, Sr., that the original of any answer he had filed had not been found and Mr. King had stated that he had a copy in his office, the court continued: "Well, I will make a ruling, but I will defer the ruling hoping you gentlemen can see a way to get together, because this is going to result evidently in a divorce." The hearing was closed December 29, 1951.

The defendant, Joseph C. Svoboda, died February 6, 1952. On July 1, 1952, Loren M. Hullinger, Jr.—son of L. M. Hullinger, Sr.—administrator of the estate of the deceased defendant —filed an amendment to the motion to set aside the default and decree, which alleged only his appointment as administrator, and prayed that he be substituted as party defendant to act for and on behalf of defendant's cause and for all matters in connection therewith, and that the court rule upon and sustain the motion to set aside the default and decree.

. Hearing on the motion as amended was had on July 11, 1952. At this time plaintiff orally objected to the substitution of the administrator as a defendant in the divorce suit because a showing would be made that the deceased had no property rights at his death on which administration could be granted.

As a witness for defendant the administrator disclosed that he had no knowledge of defendant's property rights, if any, other than appeared in plaintiff's petition.

Plaintiff testified on July 11, 1952, that at the time of the divorce they owned the home on C Street S.W., "there was no other real estate. * * *. I acquired the real estate at the time we bought it. I had been saving money from work. Both our names were on the abstract as joint tenants. * * * I worked, and all of my money went for payments on the house. I had to cash in my insurance policy. * * * I worked six years prior to the purchase of the property before the children were born and while I was married, and I also worked before I was married. I carried a bank account that I used toward the house. * * * I cashed in an eighteen hundred endowment insurance policy two years before it expired, I had to use it to make payments on bills. I purchased it when I was eighteen years old. I was single then. It was through my earnings that I purchased the house. Mr. Svoboda did not have any property of his own at the time of his death.

"The Court: Mr. Hullinger, is there any property other than the house?

"Mr. Hullinger: Not that we know of.

"The Court: Does the administrator know of any debts that decedent had?

"Mr. Hullinger: Yes. One of these is an account, balance of

payment of attorney fees. * * * I don't know what other debts he had, but I assume there are debts for funeral expenses. He owed someone, and possibly debts for the last sickness which he owes someone."

Two receipts signed by L. M. Hullinger, Sr., were produced by Mrs. Svoboda and received in evidence showing the payment to the senior Hullinger by Joseph C. Svoboda of $35 on December 3, 1951, and of $155 on December 4, 1951, for services rendered to the payee. L. M. Hullinger, Jr., testified that the only debt he knew of that the deceased owed was one for $590 for attorney fees owing to his father, L. M. Hullinger, Sr. It was on the application of the latter as a creditor of the deceased that L. M. Hullinger, Jr., was appointed administrator of decedent's estate.

The court took the matter under advisement July 11, 1952, and on October 11, 1952, made a final ruling and judgment that the deceased defendant's "motion to set aside default and decree of divorce, as amended, is overruled."

I. As stated by the substituted defendant-appellant in his printed brief and argument, this proceeding involves a motion under rule 236 of the Iowa Rules of Civil Procedure. This rule is as follows: "Setting aside default. On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation."

The rule rendered section 11589 of the Code of 1939 of no further force and effect. This section was as follows: "Setting aside default. Default may be set aside on such terms as to the court may seem just, among which must be that of pleading issuably and forthwith, but not unless an affidavit of merits is filed, and a reasonable excuse shown for having made such default, nor unless application therefor is made at the term in which default was entered, or if entered in vacation, then on the first day of the succeeding term."

This statutory provision in substantially the same language and with the same purport in the corresponding respective

sections was in the Codes of 1897, 1873, 1851, and the Revision of 1860. The requirement of an "affidavit of merits" in those Codes is omitted in rule 236, but the latter requires "good cause shown, and upon such terms as the court prescribes, but not ex parte, * * * ." A "good cause" is a sound, effective and truthful reason. It is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect. As stated in volume 2 of Cook's Revised Edition of "Iowa Rules of Civil Procedure", page 667, the "good cause" of rule 236 requires "at least a claimed defense asserted in good faith. It ought to imply that default is not to be set aside as a mere futile gesture; which it would be if defendant claims no meritorious defense. The Rule aims to give a party his day in court to present a meritorious defense; not merely to postpone the day of reckoning when no claim of meritorious defense exists."

II. Precedents are of little aid in proceedings of this kind in the determination of a particular appeal as there is much difference in the facts in the various cases. The facts in each case must rule its decision. Iowa Cord Tire Co. v. Babbitt, 195 Iowa 922, 929, 930, 192 N.W. 431. As was said in Ferris v. Wulf, 216 Iowa 289, 290, 291, 249 N.W. 156, 157: "The question here involved is one that has been before this court many times, and our reports contain numerous opinions on this question under various different sets of facts. We have announced some rules which have a bearing on the question before us, and from a review of the cases it is apparent that the fact situation largely controls these opinions."

III. The showing of "good cause" required by rule 236 was presented in the original motion filed on behalf of the defendant by his attorney, and verified by the latter. The grounds alleged therein for setting aside the default and the decree were "mistake, inadvertence, surprise, excusable neglect", specified in the rule, and "fraud and deceit practiced on the court and defendant by plaintiff", not specified in the rule. The factual basis for these grounds was the alleged reconciliation of the defendant and the plaintiff and the resumption of their marital relations in the fullest sense, and the promise of plaintiff to not prosecute the divorce proceedings, and her subsequent procurement of the decree of divorce, in breach of said promise. Defendant testified in

support of these allegations and his attorney gave corroborative testimony. The burden was on the defendant to establish these allegations. Girdey v. Girdey, 213 Iowa 1, 4, 238 N.W. 432, 434, wherein the court said: "The charge of fraud necessarily carries with it the burden on the party making it to sustain the same by sufficient evidence to satisfy the court that such fraud has been perpetrated. The presumption in the first instance is that honesty prevails in all of these matters, and when fraud is charged it casts the burden on the party asserting it to prove the same."

Plaintiff denied defendant's testimony of reconciliation and renewed cohabitation. The eldest son of the parties gave testimony tending to support this testimony of his mother. Plaintiff also testified that defendant had full knowledge that she was going into court to try to get a decree of divorce, and that he told her to do so, as he did not care. Two disinterested witnesses testified in full support of this testimony of the plaintiff.

In a similar proceeding in Kern v. Sanborn, 233 Iowa 458, 461, 462, 7 N.W.2d 801, 803, citing numerous decisions in support, the court said: "We have held repeatedly that every presumption will be indulged in favor of the correctness of the rulings upon the trial; we will not reverse if for any reason the rulings can be sustained; error is not to be presumed and the burden is on the party alleging error to show it affirmatively by the record."

IV. In passing upon the merits of a showing of "good cause" in a proceeding of this kind the trial court exercises a broad, sound judicial discretion, which, unless clearly and manifestly abused, will not be disturbed on appeal. We have so held many times: Bradshaw v. Des Moines Ins. Co., 154 Iowa 101, 105, 134 N.W. 628; Swan v. McGowan, 212 Iowa 631, 639, 231 N.W. 440, 444, in which it is stated: "On this matter wide latitude must be given to the trial court, and this, to some extent, includes the credibility of the witnesses."; Bossenberger v. Bossenberger, 210 Iowa 825, 827, 229 N.W.833; Booth v. Central States Mut. Ins. Assn., 235 Iowa 5, 11, 15 N.W. 2d 893, 896, stating, "We are reluctant to reverse a trial court, even in the denial of a motion of this kind, unless it has clearly abused its legal discretion."; In re Estate of Tiernan, 232 Iowa 139, 143,

4 N.W.2d 869, 871, where we said: "In ruling upon such questions the trial court exercises a wide discretion. Although this court is perhaps more reluctant to interfere with an order granting a new trial than with a contrary ruling, only an abuse of discretion will warrant our interference with any such order." In Andres & Co. v. Schlueter, 140 Iowa 389, 398, 118 N.W. 429, 432, the court said: "If there is any conflict in the evidence with reference to the alleged casualty or misfortune or an alleged defense, it must be resolved in favor of the action of the trial court. The application is to be determined as at law and not in equity, and the finding of the court is entitled to the same weight as the verdict of a jury. Such finding can be interfered with only when it is without support in the evidence." In Lundon v. Waddick, 98 Iowa 478, 481, 482, 67 N.W. 388, 389, an appeal from an order dismissing defendant's petition for a new trial in a case of the same title, the court stated: "The matter of sustaining such petitions rests peculiarly within the sound discretion of the trial court, and, unless abuse of discretion is shown, we cannot interfere. Before sustaining such an application, it should be made to appear that there is reasonable ground to believe that a different result will be reached upon a retrial." In Standard Oil Co. v. Marvill et al., 201 Iowa 614, 616, 617, 206 N.W. 37, 39, the trial court denied the motion of defendant United States Fidelity & Guaranty Company to set aside a default and judgment for plaintiff. The motion was based on an alleged oral agreement between the agent of the defendant surety and plaintiff's attorney. In affirming the trial court, this court held: "An agreement of this character, orally made, and not communicated to the court, is entitled to little favor. Dixon v. Brophey, 29 Iowa 460 * * *. We are not disposed to disturb the finding for the further reason that a large discretion is reposed in the trial court. * * * The finding of the trial court in the instant case was the determination of a fact question under conflicting evidence, and it stands as the verdict of a jury. Mogelberg v. Clevinger, 93 Iowa 736; Byrnes v. American Mut. F. Ins. Co., 114 Iowa 738." In Byrnes v. American Mut. F. Ins. Co., 114 Iowa 738, 740, 741, 87 N.W. 699, cited in the quotation just preceding, the court said: "A large discretion is reposed in the trial court in passing

upon applications of this kind. * * * We have in many cases affirmed the action of the trial court in setting aside the default, when we should not have reversed it had the holding been the other way."

Other decisions holding that the matter of granting new trials and vacating default decrees and judgments in cases of this kind, and there are many, are Iowa Savings & Loan Assn. v. Kent, 134 Iowa 444, 446, 447, 109 N.W. 773; Callanan v. Aetna National Bank of Hartford, 84 Iowa 8, 11, 12, 50 N.W. 69; Sitzer v. Fenzloff, 112 Iowa 491, 494, 84 N.W. 514; Craig v. Welch, 231 Iowa 1009, 1010, 1011, 2 N.W. 2d 745, in which application to set aside a default decree foreclosing a real-estate mortgage made under Code section 11589, now superseded by rule 236, was granted; Larson v. Ainsworth, 184 Iowa 1187, 1191, 169 N.W. 462. Some of these cases were brought under section 11589, Code of 1939, or under corresponding sections in earlier Codes, and others were brought under chapter 552 of the Code of 1939, entitled "Procedure To Vacate Or Modify Judgments", now superseded by rules 252 to 256, or under corresponding statutes in prior Codes.

The same wide discretion was reposed in trial courts in the determination of actions brought under either statutory procedure. This appears from Hueston v. Preferred Accident Ins. Co., 161 Iowa 521, 525, 143 N.W. 566, 568, involving the setting aside of a default decree, in which this court, after stating there was no abuse of discretion by the trial court, said: "The proposition is thus stated for the reason that this court has held that a very large discretion is vested in the trial court in the matter of setting aside a default; and, unless there is manifest abuse of discretion, its action in allowing a trial on the merits will not be disturbed. [Citing cases.] And this rule applies as well to proceedings to set aside default and judgment brought under chapter 1, title 20, of the Code [of 1897, chapter 552 of the Code of 1939], as to a motion to set aside default under Code [of 1897], section 3790 [section 11589 of the Code of 1939, now rule 236]. * * * By both parties this proceeding is treated as being under the section last quoted; and, *as the rule is substantially the same in either case, we need not discuss the question of method.*" (Italics ours.)

█ . V. The parties are in error in treating this appeal as triable in this court anew. It is true that a suit for divorce is in equity, and if an appeal from the decree on its merits were before us it would be triable de novo. But the divorce decree on its merits is not challenged in this appeal. The appeal is from the ruling of the court denying defendant's motion to set aside the default and decree. Such an appeal is not triable de novo. The question was disposed of in Powers v. The County of O'Brien, 54 Iowa 501, 503, 504, 6 N.W. 720, 721. Appellants therein challenged the court's order requiring them to strike from the petition the names of all the plaintiffs but one, and also that part of the order modifying the injunction. This court said: "The appellees meet the argument by contending that these questions cannot be considered, because of the want of exceptions, and assignments of error. Appellants reply that this is an equitable action triable anew in this court, and not upon errors assigned. This is unmistakably correct where there has been a trial upon the merits. * * * When an equitable case is tried anew upon an appeal to this court, that is ordinarily an end to the controversy. It is a trial anew of the whole controversy between the parties. * * * We think, considering these sections of the statute together, in connection with the constitutional provision, exceptions should be taken, and errors assigned, whenever a party in an equity case stands upon the ruling upon a motion or demurrer and appeals therefrom." We have never departed from that decision.

Defendant did not do so, but submitted his appeal de novo, and plaintiff acquiesced and met him on that ground and we have so passed upon it.

█ We are fully satisfied that defendant did not meet the burden on him in the trial court·in his attempt to vacate the decree, and we find no abuse of discretion in that court in overruling defendant's motion. The ruling of the district court is— Affirmed.

All JUSTICES concur.