LOREN DALE WINDUS, appellee, v. GREAT PLAINS GAS, a division of NATIONAL PROPANE CORPORATION, and NATIONAL PROPANE CORPORATION; FISHER GOVERNOR COMPANY et al., appellants, and SHELL OIL COMPANY, INC., additional appellant.

No. 51053.

(Reported in 122 N.W.2d 901)

588

Jᴜʟʏ 16, 1963.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Sᴇᴘᴛᴇᴍʙᴇʀ 17, 1963.

Lane & Waterman, of Davenport, for Great Plains Gas, a division of National Propane Corporation, and National Propane Corporation, appellants.

Shuttleworth & Ingersoll, of Cedar Rapids, for Fisher Governor Company, a corporation, appellant.

Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, for Herbert Ivan Wolf and Gladys Wolf, individually and d/b/a Wolf Appliances, and Raymond Penderson, appellants.

William L. Meardon and Ansel Chapman, both of Iowa City, for Ruud Manufacturing Corporation, appellant.

Betty, Neuman, Heninger & McMahon, of Davenport, for Shell Oil Company, Inc., appellant.

Messer & Cahill and Jay H. Honohan, both of Iowa City, for appellee.

THOMPSON, J.—This case comes before us for the second time. On the original appeal, we held that the trial court had no power to set aside a judgment of dismissal entered under the provisions of Rule of Civil Procedure 215.1. Thereupon the plaintiff filed his petition to vacate judgment under the provisions of R. C. P. 252 and 253. The trial court granted the petition and set aside the judgment, and we granted leave to appeal. Three cases are involved, all containing the same issues; and by stipulation the ruling herein applies to each of them. The first appeal appears in our Reports in Windus v. Great Plains Gas, 254 Iowa 114, 116 N.W.2d 410.

The facts adduced upon the motion to reinstate which was involved in the first appeal were by stipulation also made a part of the record in this case. Since the present appeal is in the same case as the first one, we shall not repeat the facts set out in the opinion therein. Briefly, that appeal involved the right of the trial court to set aside upon motion a judgment of dismissal entered under rule 215.1. The trial court sustained the motion, and we reversed, holding that it had no power so to do. We said, however, that the proceedings which we there ruled upon are not to be confused with an attempt to vacate the judgment under rules 252 and 253; and that the defendants did not challenge the right of the plaintiff to a hearing under those rules, "but such admission does not include an admission of plaintiff's

right to prevail thereunder." Windus v. Great Plains Gas, 254 Iowa 114, 123, 116 N.W.2d 410, 415. Following our decision in the cited case the plaintiff, within one year from the date of the entry of the judgment which dismissed his action under rule 215.1, filed his petition to vacate under rules 252 and 253. After a hearing the trial court granted the prayer of the petition and we have this appeal.

Rule 252 so far as material here is set out:

"Upon timely petition and notice under rule 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds:

(a) Mistake, neglect or omission of the clerk;

(b) Irregularity or fraud practiced in obtaining the same;

(c) * * *

(d) * * *

(e) Unavoidable casualty or misfortune preventing the party from prosecuting or defending;

(f) * * *."

We do not quote other subsections of the rule not relied upon by the plaintiff here.

The petition to vacate alleges three grounds for relief: first, "Mistake of the clerk in that said Rule 215.1 was not applicable to this case due to facts hereafter set out"; second, "That there was irregularity in the entry of dismissal in that case was not assigned for trial as required by Rule 215.1"; and third, "There was unavoidable casualty and misfortune which prevented this plaintiff from prosecuting this case under the provisions of Rule 215.1." Three situations are then set out which the plaintiff asserts show unavoidable casualty and misfortune. We shall state these later in this opinion. The trial court granted the petition to vacate on all grounds.

I. The first contention, that the clerk was mistaken in applying rule 215.1 to this case can be shortly answered. We held the rule applicable on the first appeal, and that ruling is now the law of the case. In fact, we could not have made the decision we did if rule 215.1 had not been applicable. Our holding there necessarily involves the applicability of the rule to the case. Lawson v. Fordyce, 237 Iowa 28, 32–43 inclusive,

21 N.W.2d 69, 73–78 inclusive. There the rule of "law of the case" is exhaustively analyzed and many cases cited. See also Iowa Development Co. v. Iowa State Highway Comm., 255 Iowa 292, 299, 122 N.W.2d 323, 327. The trial court was in error in sustaining the petition to vacate on this ground.

II. The same holding applies to the second ground asserted in the petition: that there was irregularity in the entry of the judgment of dismissal because the case was not assigned for trial "as required by Rule 215.1." We impliedly at least upheld the regularity of the proceedings when we reversed the trial court's ruling setting aside the judgment of dismissal. The regularity of the clerk's procedure in giving notice and entering judgment when the case was not tried at the prescribed term of the court was not challenged and our ruling that the judgment was valid necessarily upheld the regularity of the procedure.

Nor is it made the duty of the clerk, under the rule, to assign the case for trial, or to see that it is tried. In the first opinion, we quoted with approval (on page 122 of 254 Iowa), saying that it was part of the trial court's order with which we agreed: "The Court further finds that the above captioned cases were not assigned for trial during the September term of Court nor was any request for their assignment made by any party to this litigation." In Talbot v. Talbot, 255 Iowa 337, 341, 122 N.W.2d 456, 458, we said: "After such notice by the clerk, there is no discretion in the trial court to assign or not assign the case for trial, *and unless affirmative action by one or both sides of the litigation is taken*, it has no authority to continue the matter on its own motion." (Italics supplied.)

The clerk has performed his full duty when he gives the notice prescribed by rule 215.1. It may be the practice in many of the judicial districts to make an assignment of all cases coming under the dismissal rule; but this is not the duty of either the clerk or the trial court. Parties who receive the notice are charged with protecting their rights. They must see that the case is "assigned and tried", or suffer the consequences of dismissal. They may, of course, file a motion for continuance, but "No continuance under this rule shall be by stipulation of parties alone but must be by order of court." It is also provided

that "satisfactory reasons for want of prosecution or grounds for continuance must be shown by application and ruling thereon after notice and not ex parte." Rule 215.1, supra. The rule is meant to expedite litigation, and to make the dismissal practice uniform over the state. Talbot v. Talbot, supra, loc. cit. 255 Iowa 341, 122 N.W.2d 459. Before the adoption of the rule, each district had its own dismissal rule, and these varied considerably. Lawyers with practices in the several districts of the state were thereby placed under the necessity of watching and complying with differing dismissal rules in each judicial district; a confusing and burdensome situation. Now each attorney knows that the rule is the same state-wide. But he must comply with the rule as written; and he may not expect the clerk of court to see that his case is assigned and tried. That is his duty. Again the court erred in granting the petition to vacate on this ground.

III. Probably the chief reliance of the plaintiff is upon his third ground, which asserted "unavoidable casualty and misfortune" which prevented him from prosecuting his case. He divides his claim at this point into three grounds which he thinks support his contention. We quote them:

"(a) On the 20th day of October, 1961, an additional defendant, Shell Oil Company, Inc. was impleaded and said defendant was not served until November 3, 1961, and therefore did not appear nor was compelled to appear until after the September term 1961 had expired.

"(b) That on the 3rd day of October, 1961, a conference was held after a hearing on this case between the presiding Judge and three of the attorneys involved and agreed by all present that the said case would not be able to be tried during the September term of 1961.

"(c) That the plaintiff nor his attorneys were not aware of the date of the expiration of the said term and plaintiff's attorney relied upon the fact that same would expire on the 17th day of November."

Some general rules of procedure must be considered at this point. A petition to vacate a judgment under rules 252 and 253 is not triable de novo on appeal. If there is conflicting

594

evidence, or if different inferences may reasonably be drawn from the facts shown, the trial court's findings have the effect of a jury verdict. Svoboda v. Svoboda, 245 Iowa 111, 122, 60 N.W.2d 859, 865, 866; Standard Oil Co. v. Marvill, 201 Iowa 614, 616, 617, 206 N.W. 37, 39. It is also settled law that in passing upon such a petition the trial court has a considerable discretion, and we will not reverse unless an abuse is shown. Svoboda v. Svoboda, supra, loc. cit. 245 Iowa 119, 60 N.W.2d 864, and citations. This discretion is not final or conclusive; it must have some support in the record. However, we have said that we will be more reluctant to find an abuse of discretion where the judgment has been set aside than where relief has been denied. Ferris v. Wulf, 216 Iowa 289, 291, 249 N.W. 156, 157.

■ It is also well settled that no general rule can be laid down which will govern all cases involving motions to set aside defaults or applications to vacate judgments. Each case must be determined upon its own facts. Svoboda v. Svoboda, supra, loc. cit. 245 Iowa 118, 60 N.W.2d 863; Tate v. Delli, 222 Iowa 635, 640, 269 N.W. 871, 873.

■ IV. We now reach another rule which has been announced in Hueston v. Preferred Accident Ins. Co., 161 Iowa 521, 525, 143 N.W. 566, 568. There it was held that the rule that the discretion vested in the trial court to set aside default judgments and in ruling on petitions to vacate "is substantially the same in either case." This was quoted with approval in the Svoboda case, loc. cit. 245 Iowa 121, 60 N.W.2d 865. If this means that the same quantum of evidence will support a ruling vacating a judgment under rule 252 and a ruling setting aside a default judgment under rule 236, we must disapprove. Many of the authorities cited in support of the trial court's ruling in the instant case involve motions to set aside default judgments. We do not find them in point. It is only necessary to point out the grounds prescribed by rule 236 which will sustain a motion to set aside a default judgment, and those fixed by rule 252 for upholding a petition to vacate. Rule 236 says that the court may set aside a default or the judgment thereon "for mistake, inadvertence, surprise, excusable neglect or unavoidable casual-

ty." Rule 252, so far as material here, provides that the court may "correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds: * * * (e) Unavoidable casualty or misfortune preventing the party from prosecuting or defending." There is no inclusion in rule 252 of any right to vacate a judgment for mistake, inadvertence or excusable neglect. There is a wide difference between these terms and "unavoidable casualty or misfortune." Mistakes may be made; inadvertence may be present; and excusable neglect covers a wide latitude of negligence. But none of these, which will justify setting aside a default, amount to unavoidable casualty or misfortune. By their definitions, they are not such.

Black's Law Dictionary, Fourth Ed., at page 1693, defines "unavoidable casualty": "An event or accident which human prudence, foresight, and sagacity cannot prevent, happening against will and without negligence. [Citing authorities] Within the meaning of statutes in several states relating to the vacation of judgments, means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor, would have been done, *and does not include mistakes or errors of judgment growing out of misconstruction or understanding of the law, or the failure of parties or counsel through mistake to avail themselves of remedies, which if resorted to would have prevented the casualty or misfortune.*" (Italics supplied.)

Although this court has in the past gone to considerable lengths to uphold rulings setting aside defaults or vacating judgments, we have recognized the principle laid down by Black in the foregoing quotation. In Barto v. Sioux City Electric Co., 119 Iowa 179, 183, 93 N.W. 268, 270, we said: "Defaults occurring through negligence or carelessness on the part of the judgment defendant or his attorney will not, of course, be set aside, for the law rewards the diligent, and not the careless. Moreover, one who, through carelessness or inattention to duty, brings misfortune upon himself, will not, as a rule, be heard to complain."

That the negligence of an attorney is chargeable to his client, see Barto v. Sioux City Electric Co., supra; and Iowa Cord Tire Co. v. Babbitt, 195 Iowa 922, 929, 930, 192 N.W. 431,

434, 435, where there is a considerable discussion of the question, with citation of authorities.

Considerable confusion has been caused by the fact that our cases have often failed to distinguish between what we now consider should be different rules governing motions to set aside defaults and applications to vacate judgments. Even before the adoption of the present Rules of Civil Procedure in 1943, we now think a stronger showing should have been required upon an application to vacate than to set aside a default. Under section 11589, Code of 1939, a default could be set aside if a reasonable excuse was shown; while section 12787 required then, as rule 252 does now, that unavoidable casualty or misfortune must appear. Yet many of the cases seem to have considered the two statutes as similar in intent and meaning; in fact, as we have pointed out, some of the cases said they were identical. We do not now so consider rules 236 and 252, for the reasons stated.

 ·V. We now turn to the evidence in the case to determine whether the trial court abused its discretion in finding unavoidable casualty or misfortune. The facts appearing in the first appeal are before us by stipulation. We there commented upon the leisurely manner in which the case had proceeded up to the time of dismissal. It was commenced almost two years after the happening of the accident alleged. Motions and interrogatories were filed, to which the plaintiff paid scant attention. Interrogatories were filed by some of the defendants on December 8, 1960. These were given attention by the plaintiff on September 13, 1961, when objections were lodged against some and answer made to the others. On October 4, 1961, the court granted a motion to strike the objections, which in effect meant the interrogatories must be answered; but no answers were filed until after the dismissal order. A motion for more specific statement requested by one of the defendants was sustained by the court on October 4, 1961, but the plaintiff again did not comply until after the order of dismissal had been entered on November 7 next. These matters are set out in the opinion in the first case; and it is pointed out that it was the plaintiff who was in default and responsible for much of the delay. We discussed this in dealing with the contention based on the fact that on October

20, 1961, upon motion of the defendant National Propane Corporation, Shell Oil Company was brought in as a third-party defendant. The cross-petition sought indemnity or contribution from Shell if National Propane was held liable in the main case. The plaintiff was in no manner involved. But it was urged then, and again now, that because of the fact that the time for appearance of Shell had not arrived when the action was dismissed on November 7, the plaintiff is in some manner excused from complying with rule 215.1. We answered this contention in Windus v. Great Plains Gas, supra, 254 Iowa 114, 126–130 inclusive, 116 N.W.2d 410, 417–419 inclusive.

The same reasoning applies to the present attempt to make of this circumstance an unavoidable casualty or misfortune. As we pointed out before, it might have supported an application for continuance; but it was not something that human care and diligence could not have guarded against. The fact that provision for continuance is included in the rule is an indication that it is not safe to permit the time of dismissal to arrive without action. If a case is not at issue, whether the fault be that of plaintiff or defendant, or both, reasonable care dictates the filing of application for continuance.

VI. The second matter pleaded by the plaintiff as support for a finding of unavoidable casualty or misfortune is that on October 3, 1961, a conference was held, present were the presiding judge and three of the lawyers involved, at which time it was agreed that the case could not be tried at the September 1961 term, the term at which it must be tried in accordance with the notice given by the clerk, under pain of dismissal under rule 215.1. It is pertinent at this point to point out that there is no substantial dispute in the evidence either that before us at the time of the original opinion, Windus v. Great Plains Gas, supra, or that taken at the hearing on the present petition to vacate. The only question is whether the uncontradicted evidence, given its reasonable interpretation, supports the findings and ruling of the trial court.

At the hearing on the petition to vacate, the plaintiff attempted to support the second allegation of unavoidable casualty by the testimony of one of his attorneys, who said that at the

time of the hearing the presiding judge stated that the case could not be tried at the September term; and that he thought it would have to be specially assigned for some later term. The testimony of the two attorneys for two defendants who were present is in general agreement with this, except that they emphasized there was no agreement for a continuance. The statement of the court was made after a hearing on the question of the interrogatories, and seems to have been no more than a part of some informal conversation. It must be noted that several of the defendants were not present either in person or by counsel at this hearing; so it would be impossible for the plaintiff to conceive that any binding agreement for trial at a later term was then made. There was undoubtedly some talk to the effect that because of the number of defendants and the complexity of the case it would be necessary to assign it specially.

Again we are faced with the provisions of rule 215.1. We have pointed out above that a method of obtaining continuances when it is not possible to try the case in the final term before dismissal is set out. But it is clearly stated that a continuance must be granted "by application and ruling thereon after notice and not ex parte." Also "No continuance under this rule shall be by stipulation of parties alone but must be by order of court."

We said in Talbot v. Talbot, supra, loc. cit. 255 Iowa 337, 339, 122 N.W.2d 456, 458, "the trial court has no power to grant a continuance of the matter, except on application, notice and hearing to all parties, unless the same is by stipulation, and then only by an order made of record in the cause." Citing Windus v. Great Plains Gas, supra.

It is true we are here dealing with a petition to vacate; but at this point we are concerned with whether the situation shown by the plaintiff's evidence makes a case of unavoidable casualty or misfortune. Casualty and misfortune undoubtedly appeared; but were they unavoidable? The plaintiff's case stumbles and falls over this word. Rule 215.1 gives notice to all who will take the trouble to read that continuances may be granted only on application, notice and hearing, and then only by an order "made of record". There was no reason for the plaintiff to take an informal remark of the court as an excuse why no application

for continuance need be made. In the Talbot case, supra, the trial court had deleted the case from the assignment; but we held this beyond its power, if this meant the case was continued. Failure to follow a plainly written rule does not make the unfortunate result unavoidable.

In fact, the plaintiff's counsel seem to have been well aware of the rule. After receiving the notice from the clerk of the court that the case was under the dismissal order, they wrote a letter to each of defendant's counsel in which they referred to the fact of the case being assigned "or else" at the current term. Knowing this, they must have known that the case must be disposed of at that term, or proper application for continuance made.

 VII. Finally, to support his claim of unavoidable casualty or misfortune, the plaintiff pleads that he and his attorneys were not aware of the expiration date of the September term in Muscatine County and relied upon the belief that it would end on November 17 rather than on an earlier date when it did in fact terminate. The notice sent out by the clerk did not state the end date of the September term in the Muscatine district, nor is it required that it do so. Mr. Honohan, a member of the law firm which represented plaintiff, testified that he had been in practice less than two years, and that he thought the term in the Muscatine district would end on the same date as in the Johnson district, where he resided and had chiefly practiced. His reason for thinking this is not apparent. He also said, however, that he had consulted with Mr. A. C. Cahill, senior member of the firm and a lawyer with long experience in the practice, in regard to various matters concerning the need for a motion for continuance under rule 215.1; and he also admitted that they had in their offices a copy of the "1961 Iowa Legal Directory", and other publications, which contained the dates of opening and closing of terms of court in all districts of Iowa. The date of termination of the September 1961 term of the Muscatine District Court was readily at hand; Mr. Cahill must have known that the dates varied from district to district, if Mr. Honohan did not; and Mr. Honohan does not contend that a motion for continuance would have been filed before the sup-

posed terminal date. There is nothing here which supports the trial court's ruling.

VIII. The plaintiff relies much, with citation of many authorities, upon the legal aphorism that courts favor trials on the merits. This is a sacred beatitude of the law: and to question it is comparable to criticizing Holy Writ. Yet we think it requires some qualification. Carried too far, it results in the decision of cases according to the whim of the trial judge, a government of men instead of by law. Procedural rules are not always merely technical. They represent the best means of trying lawsuits by orderly procedures so that all may know what may and what may not be done, as found by the experience of courts and lawyers over the years. As far back as Shakespeare's time "the law's delay" was cited as one of the things that raised Hamlet's question "To be or not to be." Many efforts have been made to expedite litigation; our Rules of Civil Procedure have this as one of their chief objectives. The rule that courts favor trials on the merits should be qualified to read that courts favor *expeditious* trials on the merits, *under settled rules of procedure.* It should not be stretched to the point where a judgment will be vacated when the petitioner, through his counsel, has ignored plain mandates of the rule with ample opportunity to abide by them. To do so would be to abrogate the rule and to reward negligence or inattention.

IX. There may be cases of "unavoidable casualty or misfortune" which will uphold a ruling setting aside a judgment. Many cases are cited by the plaintiff in which we have upheld orders granting motions to set aside defaults, or vacating judgments because of such unavoidable casualties or misfortunes. As we have pointed out, the language of the former statutes, and the present rule on setting aside defaults, varies so much from the former statute on vacation of judgments, and the present rule 252, that cases in which defaults were annulled are not in point. Such is the case of Handy v. Handy, 250 Iowa 879, 96 N.W.2d 922. In addition, there the order of the court permitted the defaulter to appear by a fixed date, and her attorney did appear on that date, so that the default was untimely entered. Lovrien v. Rowe, 251 Iowa 453, 100 N.W.2d 166, concerned a

denial of a petition to vacate on the ground of newly discovered evidence. This ground is not pleaded or relied upon here. It is impossible to discuss and analyze each of the many cases cited by the opposing parties in their briefs. A majority of them deal with defaults and need no further attention, as we have endeavored to make clear.

Likewise, we think cases preceding the adoption of our rule 215.1, which went into effect on July 4, 1961, have little bearing on the problem before us. For instance, in the case of Thoreson v. Central States Electric Co., 225 Iowa 1406, 283 N.W. 253, we held that violation of an oral agreement between attorneys would be ground for vacating a judgment of dismissal because of unavoidable misfortune. Loc. cit. 225 Iowa 1409, 283 N.W. 255. Omitting reference to other cases which hold to the contrary, and accepting this, arguendo, as the law of Iowa up to the time of the effective date of rule 215.1, it is no longer in point. Rule 215.1 shows on its face that such agreements are no longer valid. It provides that "No continuance * * * shall be by stipulation of parties alone but must be by order of court." The rule further provides that grounds for continuance must be shown by application and ruling thereon after notice and not ex parte. Without doubt, a part of the reason for the rule was to avoid the confusion and contradictions of claims of oral agreements by the parties or of informal statements or oral promises by the courts.

The rule gives clear notice that no reliance may now be placed on any alleged agreements by the parties; continuances are to be had only after formal application, notice and hearing, and must be granted by order of court duly entered. There is then no basis for a claim of reliance upon any outside agreement of counsel or anything said or done by the court, short of a formal order. With this rule in effect, the many cases in which such agreements of parties or informal actions or words of the court have been discussed may no longer be relied upon as authority for "unavoidable casualty or misfortune." To permit any such showing and vacation of the judgment therefor would be to nullify the rule. It is clear, and furnishes a not difficult way of obtaining a continuance where grounds therefor

exist. Notice was given in ample time to permit counsel to move for trial of the case, or to apply for a continuance; they were cognizant that this must be done "or else", as their letter to opposing counsel stated. It is regrettable that nothing was done; but to err is human, and the ablest lawyers, like the courts, (and including appellate courts) are not infallible. The practicing lawyer who has never made a mistake, who has never omitted to do something which diligence required that he should have done, would be difficult to find. It is a risk inherent in a difficult and often controversial profession. We have scanned the record with these rules in mind: That the evidence before the trial court must be given the most favorable aspect to the plaintiff which it will reasonably bear; and that the court had a broad discretion in making its ruling, and we may not reverse in the absence of abuse of such discretion. But, having done so, we are unable to find anything which supports the decision made. No more appears than "a failure of parties or counsel through mistake to avail themselves of remedies, which if resorted to would have prevented the casualty or misfortune."

The case must be remanded, with directions to dismiss the petition to vacate.—Reversed and remanded.

All JUSTICES concur except LARSON, J., who takes no part.