LEON W. COOK, appellee, v. MARY C. COOK, appellant.

No. 52181.

November 15, 1966.

Grate, Moore, Warren & Potter, of Des Moines, for appellant.

Gilbert & Stoddard, of Oskaloosa, for appellee.

Mason, J.—This is an action brought under rules 252 and 253, Rules of Civil Procedure, by defendant-former wife, Mary C. Cook, to vacate a decree granting divorce to plaintiff, Leon W. Cook. The action, tried as an ordinary one, was dismissed by the trial court. Defendant appeals.

March 20, 1964, plaintiff filed his petition seeking a divorce on the grounds of cruel treatment such as to endanger life. Section 598.8(5), Code, 1966. Defendant accepted service of original notice that date. March 23 an appearance was filed by an attorney on behalf of defendant and plaintiff filed a motion supported by his affidavit, moving the court to waive the waiting

period in the case provided by section 598.25. That day a decree was entered granting plaintiff's motion, granting him a divorce by default on the grounds alleged, custody of two minor children of the parties and approving a stipulation between the parties, submitted to the court but not filed with the decree.

I. Defendant originally filed her petition to vacate judgment in November. January 12, 1965, an amended and substituted answer and petition were filed, division one being defendant's answer to plaintiff's petition for divorce and division two being her petition to vacate the judgment entered March 23, 1964.

The former wife alleged irregularity, fraud and coercion practiced in obtaining the decree. She claims the court was without jurisdiction to grant a decree three days after the petition was filed.

Plaintiff's answer denied generally the allegations in the petition to vacate and trial was had thereon.

The court found no irregularity in the divorce proceedings and no fraud, collateral, extrinsic or otherwise, practiced upon either the court or defendant-wife.

II. Defendant assigns as errors relied on for reversal: (1) Lack of jurisdiction to grant a divorce three days after filing petition, (2) failure to admit evidence of intrinsic fraud in conjunction with evidence of extrinsic fraud, (3) failure to vacate decree due to irregularity, (4) forbidding deposition of Janine Odette Dudley, (5) failure to vacate due to fraud, and (6) error in excluding evidence offered by defendant.

Questions presented by the appeal are: (1) Did defendant make a case of irregularity or fraud? Claimed error (2) in suppressing the taking of a deposition; (3) in ruling on objections to evidence; and (4) in sustaining plaintiff's motion to shorten the 60-day waiting period.

III. Rule 252, R. C. P., states:

"Upon timely petition and notice under rule 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds:

"* * * (b) Irregularity or fraud practiced in obtaining the same * * *."

A petition for vacation of judgment is tried as an ordinary action to the court and is not triable de novo on appeal. Jacobson v. Leap, 249 Iowa 1036, 1041, 88 N.W.2d. 919, 922; Svoboda v. Svoboda, 245 Iowa 111, 122, 60 N.W.2d 859, 865.

If there is conflicting evidence, or if different inferences may reasonably be drawn from the facts shown, the trial court's findings have the effect of a jury verdict. The trial court in passing upon such petition has a considerable discretion, not final or conclusive but requiring some support in the record. Windus v. Great Plains Gas, 255 Iowa 587, 593, 594, 122 N.W.2d 901, 905. A stronger showing is required upon an application to vacate than to set aside a default under rule 236, R. C. P. Windus v. Great Plains Gas, supra, 255 Iowa, at 594–596, 122 N.W.2d, at 905, 906.

The only issue tried by the court was whether there was fraud sufficient to justify the setting aside of the decree. Both parties agreed the divorce action was not being tried again.

IV. In arguing her first assignment of error, lack of jurisdiction to grant a divorce, defendant contends the facts in plaintiff's supporting affidavit attached to his motion to waive the waiting period provided by Code section 598.25 were insufficient to warrant immediate action. In the affidavit plaintiff stated the cause should be tried and determined at once because of the best interests of the children.

In the decree the trial court found the grounds stated in the affidavit satisfied the court immediate action was warranted to protect the substantive rights and interests of the parties affected by the decree and the facts to support such finding need not be recited in the decree.

Section 598.25 provides:

"Waiting period before decree. * * * the court may in its discretion, on written motion supported by affidavit setting forth grounds of emergency or necessity and facts which satisfy the court that immediate action is warranted or required to protect the substantive rights or interests of any party or person who might be affected by the decree, hold a hearing and grant a decree of divorce prior to the expiration of the sixty-day period, provided that requirements of notice have been complied with.

In such case the grounds of emergency or necessity and the facts with respect thereto shall be recited in the decree unless otherwise ordered by the court."

Although some more detail could have been included in plaintiff's affidavit, there were sufficient facts and grounds to satisfy the court and it exercised the discretion given by the statute to hold the hearing and waive the time. The discretion was not abused.

This assignment cannot be sustained.

V. Defendant's second assignment contends evidence of intrinsic fraud is admissible in action to vacate decree. We do not agree.

"The time-honored rule is that the fraud must be extrinsic or collateral to the matter first tried, and not fraud in a matter on which the judgment was rendered. * * * 'Extrinsic or collateral fraud * * * may consist of acts or promises lulling the defrauded party into false security, or preventing him from making defense, and many other acts [citation].'" Scheel v. Superior Manufacturing Co., 249 Iowa 873, 882, 89 N.W.2d 377, 382–384, where the authorities are analyzed. See also Sorenson v. Sorenson, 254 Iowa 817, 825, 119 N.W.2d 129, 134.

"Extrinsic, as distinguished from intrinsic, fraud, pertains not to the judgment itself, but to the manner in which it is procured." Oregon-Washington R. & Nav. Co. v. Reid, 155 Ore. 602, 610, 65 P.2d 664, 667, and citations.

"Fraud is classified as intrinsic or extrinsic. Included in the term 'intrinsic fraud' are false testimony, fraudulent instruments, and any fraudulent matter that was presented and considered in rendering judgment." Crouch v. McGaw, 134 Tex. 633, 639, 138 S.W.2d 94, 97, and citations.

"Extrinsic fraud" is some act or conduct of prevailing party which has prevented a fair submission of the controversy, while "intrinsic fraud" relates to questions that were in conflict and not necessary for the court to determine. Putnam v. Putnam, 126 Kan. 479, 268 P. 797, 799.

VI. "The charge of fraud necessarily carries with it the burden on the party making it to sustain the same by sufficient evidence to satisfy the court that such fraud has been per-

petrated. The presumption in the first instance is that honesty prevails in all of these matters, and when fraud is charged it casts the burden on the party asserting it to prove the same." Girdey v. Girdey, 213 Iowa 1, 4, 238 N.W. 432, 434, cited in Svoboda v. Svoboda, supra, 245 Iowa, at 119, 60 N.W.2d, at 864.

Plaintiff and defendant were married June 14, 1940, and lived together as husband and wife until February 23, 1964. They are the parents of two daughters, 16 and 20. They had resided in Montezuma, where the husband had been a practicing veterinarian, since 1940. Prior to the commencement of the divorce proceedings the wife worked at the business of the parties known as "The Party House".

Defendant had been admitted to the psychiatric ward in Mercy Hospital at Marshalltown February 24, 1964. While there she was given tranquilizers four times a day and when released March 17 tranquilizer medication was prescribed for her future use. While in the hospital she wrote an attorney in Montezuma asking for an appointment.

Upon the defendant's discharge from the hospital, plaintiff accompanied by the wife's sister-in-law transported the wife from the hospital to Des Moines for lunch. Plaintiff bought his wife "the best Singer sewing machine", returned to Montezuma where he and defendant went to the office of the attorney whom the wife had written from the hospital. The parties returned to this office March 20. The petition, stipulation, motion to waive time, a proposed decree, an original notice with acceptance of service and an attorney's appearance for defendant had been prepared.

The trial court specifically found "that by no act or conduct was the court either misled or imposed upon in the divorce proceedings and that no fraud was practiced on the court" and concluded there was no fraud, collateral, extrinsic or otherwise, practiced upon the court. We find no basis for disturbing this conclusion.

VII. Our consideration of defendant's third and fifth assigned errors is thus limited to an inquiry whether defendant was deceived and fraud was committed against her.

To meet her burden defendant offered witnesses who were employed at The Party House or other acquaintances of both

parties, plus her brother and sister-in-law.

The employees told of their acquaintances with both parties and their observations of defendant within a short time prior to her admission to the Marshalltown hospital February 24, describing her as nervous, upset, tired and with a tendency to cry.

The acquaintances similarly described defendant as nervous, upset and in a dazed condition before entering the hospital, while a patient and after discharge. One witness who had lived in the Cook home for approximately five years described defendant as a person the witness could always turn to before and that after her return from the hospital defendant was completely different, did not seem capable of knowing what she was doing. Their opportunity to observe defendant was limited to visits at the hospital, her visits in their homes either before or after her admission to the hospital and two luncheon occasions.

Defendant's brother and wife described her appearance while in the hospital, while living in their home in Winona, their surprise on learning of the marital difficulty, their complete lack of knowledge of the entry of the divorce decree and the substance of conversations with plaintiff on visits to Montezuma. The sister-in-law told about accompanying plaintiff to the hospital when defendant was discharged, the trip to Des Moines and return to Montezuma. Shortly thereafter plaintiff and defendant left for the attorney's office.

However, no medical witnesses were offered to describe defendant's condition from February 24 to March 17, nor her capacity to understand and conduct her financial affairs. Such testimony would have been helpful to the court had it been available.

One of defendant's main contentions relates to the meeting in the attorney's office where the previously prepared divorce papers were executed. She claims when she arrived at the attorney's office she was not informed whom he was representing. While admitting she had written this attorney while in the hospital, she contends her sole purpose was to seek help in securing a social security number. In view of the attorney's answer to her letter, this contention is hardly plausible. By letter dated March 11, 1964, he advised her he did not take contested divorce matters

but continued "however, if you and Doc have agreed upon a divorce and upon an equitable settlement of your property, and if I can then be of further assistance in working it out, I would do so, but I would not take any case one as against the other." A copy of this letter was received in evidence.

She claims at this conference the attorney told her it was customary to have witnesses to these papers and would it be all right to call another attorney. Subsequently this attorney came into the office and other than saying hello had no further conversation with her. Later this attorney entered his appearance for defendant in the divorce action, she claims without authority. She complains the attorney never consulted with her about the extent and nature of the parties' property interests accumulated in 24 years of marriage, her rights to alimony or of the procedure being followed, including waiver of the 60-day waiting period.

She declares she did not receive a copy of the decree. A copy of a letter dated March 23 from plaintiff's attorney to Mrs. Cook, stating "I enclose a copy of the divorce decree signed and entered by the Court this day. We are working on a deal for the sale of The Party House, and have some hope of success. I will keep you advised," was in evidence.

Testimony was introduced that the original letter was mailed to defendant. In a letter postmarked May 5 to plaintiff, defendant stated "There is no judge's signature on my papers. Thank God for that."

Her complaints generally toward the attorney are that considering her emotional state at the time she was not adequately protected by counsel.

Defendant claims the total assets of the parties at date of stipulation, including household furnishings valued at $8000, were $140,587.48 exclusive of indebtedness of an indeterminate amount. In arriving at this amount the residence was valued at the construction cost, $55,000.

By stipulation defendant was awarded a lien of $8000 against the home payable upon death or remarriage of plaintiff or upon sale of the property, a $4000 lien on The Party House payable from the proceeds of sale when and as received but in any event within one year from date of the stipulation, a fourth

interest in a Keota drugstore owned in partnership by plaintiff and Wayne Olson which had paid $150 a month to defendant, $1200 payable in monthly installments of $200 commencing on the entry of the decree, a new 1964 Chevrolet station wagon, fully insured for two years, and payment of defendant's medical bills incurred for two years from date of decree. In addition plaintiff bought defendant "the best Singer sewing machine", a portable t.v., record player and approximately $300 worth of unpainted furniture and linen. Plaintiff was to assume and pay all outstanding debts of the parties including court costs and attorney fees.

A letter of March 7 in defendant's handwriting was introduced in evidence. While nothing was said about a divorce, defendant did set forth her requests for a property division. The husband answered this letter, agreeing to the division suggested, and the items she requested were awarded her in the stipulation. Also introduced were the attorney's notes of March 17 made in the presence of the parties from information obtained from defendant, containing similar demands. However, the residence was listed as having a sale value of $24,000.

Defendant testified she had received the Chevrolet station wagon, the sewing machine, the various items of furniture, $1200 payable in six monthly installments and $2000 from the sale of The Party House. At the time of hearing plaintiff had not remarried and the residence had not been sold.

Neither of the attorneys involved in the divorce action appears as counsel in the present proceedings, although both were called as witnesses and contradicted many of defendant's assertions.

Defendant's attorney testified he had been notified in advance by plaintiff's attorney of the conference for March 20. When he arrived both parties were present. Plaintiff's attorney advised him the parties were contemplating an uncontested divorce, had agreed on a property settlement and he had prepared a stipulation in accordance with their agreement, as he understood it. Plaintiff's attorney then read aloud the stipulation and made inquiry whether it contained their agreement. Both parties indicated it did. Before the instrument was executed there was

some inquiry as to when a judge would be available. It was pointed out there was a possibility a judge would be there Monday, the 23d. Defendant's attorney was furnished with copies of all divorce papers, including the waiver of time and plaintiff's affidavit. Plaintiff's attorney corroborated this testimony.

The court found defendant had been properly represented by her attorney and each of the parties fully advised of their rights.

Defendant had managed The Party House, had authority to write checks, was acquainted with the extent of plaintiff's veterinary practice and of the income from the drugstore. She was able to furnish her present attorney with an itemized list of plaintiff's assets as of March 23. From this evidence the court could find defendant was familiar with the nature and extent of the property accumulated by the parties. We do not understand her to contend plaintiff had failed to make a full disclosure of his property interests to her.

It is our conclusion the trial court's decision defendant had failed to sustain the allegations of the petition to vacate judgment is supported by substantial evidence and is binding on us.

VIII. Defendant's final assignment complains of the sustaining of plaintiff's motion to prevent the taking of the oral deposition of Janine Odette Dudley. Notice of the taking of Miss Dudley's deposition had been given December 7, 1964.

The court found the motion was supported by affidavit indicating the witness whose deposition defendant proposed to take was unknown to Mr. Cook prior to March 23, 1964, and the witness had no knowledge of any facts which would afford a charge of extrinsic fraud and she should be relieved of any responsibility of appearing for said oral deposition.

Rule 141(d), R. C. P., provides:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken * * *."

This portion of the rule is Federal rule 30(b) except that

836

"expense" has been added at the end of the provision.

 The discovery rules vest the district court with discretion to measurably control, limit and even to prevent the taking of depositions where for good cause shown it will not, in the opinion of the district judge, promote the administration of justice in the particular case that they be taken. There is a prima facie right in every case to take discovery depositions and such right should not lightly be overridden. While it is possible that situations may arise where it would be appropriate to deny the taking of a deposition, it will be seldom that a court will forbid the taking of a deposition altogether, in view of other protective orders which the court is authorized to make and which would give adequate protection against a particular abuse. Ordinarily, the court will not prevent the taking of a deposition unless there is a clear showing that such relief is essential. Mere inconvenience of the party whose deposition is to be taken is not such good cause, nor is a claim by the witness that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge. The discretion vested in the court should not be abused. 2A Barron and Holtzoff, Federal Practice and Procedure, section 715.1; 7 Cyclopedia of Federal Procedure, Third Ed., pages 266 and 278.

 We seriously doubt whether the motion and affidavit of plaintiff stated a sufficient good cause for denial of Miss Dudley's deposition.

We will not reverse on this ground alone.

The action of the trial court is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.