Patricia D. COPIC, Petitioner-Appellant,

v.

Dennis L. COPIC, Respondent-Appellee.

No. 3–67445.

Court of Appeals of Iowa.

Aug. 26, 1982.

Joseph A. Nugent, Norwalk, for petitioner-appellant.

Richard D. Hermann, Ankeny, for respondent-appellee.

OXBERGER, Chief Judge.

Petitioner (former wife) appeals from trial court's order denying her request to vacate a default judgment entered against her regarding modification of the decree dissolving the parties' marriage. She claims the trial court erred in finding that no irregularity or fraud (pursuant to Iowa R.Civ.P. 252(b)) occurred in connection with the default judgment modifying the dissolution decree to award custody of the parties' son to respondent (former husband). She also claims error in finding no unavoidable casualty or misfortune (pursuant to Iowa R.Civ.P. 252(e)) which prevented her from defending against respondent's modification petition. We affirm the order of the trial court.

The procedural background of this case is rather complex, encompassing conflicting procedures commenced in two different states. Patricia and Dennis Copic were married on August 16, 1975. Their only child, Ezechiel, was born December 6 of that same year. Patricia filed a petition to dissolve the marriage on May 7, 1980. A decree was entered on August 27, 1980, dissolving the marriage, dividing the property and awarding the parties joint and split custody of Ezechiel.

On December 8, 1980, Dennis filed a document in the Polk County District Court captioned, "Application to show cause for contempt and application to modify." In it he alleged that under the August 27 decree, he was to have custody of Ezechiel for Christmas week in 1980. However, he subsequently received a telegram from Patricia and a Jeff Bittner (believed by Dennis to be Patricia's new husband) in Pennsylvania stating that he (Dennis) had "lost all rights to child visitation." It was also claimed that Bittner had been harassing Dennis with abusive telephone calls for the purpose of inducing him to allow Bittner to adopt Ezechiel. Because of Dennis' fear that he would be denied visitation rights, he requested that Patricia be ordered to show cause why she should not be held in contempt and that the decree be modified to award him permanent custody of the child. On the same day, an order was entered setting a hearing on February 11, 1981 for Dennis' application. Patricia was personally served with the original notice, Dennis' application, and the order for hearing on December 29, 1980, but the record indicates that both she and her new attorney, Michael Brint, were made aware of Dennis' application and the order for hearing two or three days after Dennis filed his application.

In the meantime, Patricia filed a document in the Court of Common Pleas of Delaware County, Pennsylvania, on December 19, 1980, captioned "petition for custody." In this petition she alleged that Dennis had threatened her life, had told Ezechiel to ignore her instructions, and stated her belief that Dennis should not be allowed visitation without supervision and prior to a psychiatric evaluation of him. No mention was made of the fact that Dennis had filed his application in the Iowa Court eleven days earlier.

On February 13, 1981, the Polk County court issued a default judgment in Dennis' favor regarding his application of December 8, 1980, since no one appeared on Patricia's behalf at the hearing of February 11. The court found it had jurisdiction since it was the court of original jurisdiction over the dissolution of the marriage and also under the Iowa Uniform Child Custody Jurisdiction Act (UCCJA—Chapter 598A of the Iowa Code). Patricia was found to have had reasonable notice of the proceedings and an opportunity to be heard. Regarding her December 19 "petition for custody" filed in Pennsylvania, the court found that it did not comply with the requirements of chapter 598A. The court concluded that Dennis was better suited to raise Ezechiel and awarded custody to him with reasonable visitation for Patricia.

On May 7, 1981, Dennis filed an application for an order clarifying his rights regarding custody. He alleged that his December 8 application complied with chapter 598A while Patricia's December 19 petition did not. He also alleged that on March 3, 1981, the Pennsylvania court entered an order staying all orders of any other jurisdiction (including the Polk County decree of February 13 which had been duly registered with the Pennsylvania Clerk of Court. According to Dennis, this order of March 3 is of no effect since Patricia did not comply with the UCCJA, thus depriving the Pennsylvania court of jurisdiction). In particular, he claims that neither Patricia nor her attorney filed anything at all regarding her petition with the Polk County District Court's registry of out-of-state decrees. On June 18, 1981, the Polk County court issued an order holding the March 3 order void, reaffirmed its own decree of February 13, and ordered Patricia to return the child by June 28 or be declared in contempt.

The final episode of this procedural quagmire began on September 8, 1981, when Patricia filed her petition to vacate, pursuant to Iowa R.Civ.P. 252 and 253. This petition is the immediate subject of this appeal. She alleged, *inter alia,* that decree was obtained by "irregularity or fraud" (Rule 252(b)) or "unavoidable casualty or misfortune" (Rule 252(e)) and that Dennis' actions induced her to believe that the February 13 decree was ineffective until the time limits had expired for filing a motion to set aside that default decree under Iowa R.Civ.P. 236 or a motion for a new trial under Iowa R.Civ.P. 244.

Hearing on this petition was held on September 16, 1981, and the court issued its findings, conclusions, and decree on October 6. The court found no fraud was practiced by Dennis' attorney in obtaining the default decree as alleged. It also found that Patricia was not prohibited from appearing or being represented at the February 11 hearing by any casualty or misfortune since she knew of that hearing well ahead of time. In any event, the court said Patricia, who had gone on vacation with assurances from her attorney that her presence was not required at the hearing, got back from her vacation in plenty of time to file a timely motion to vacate the default decree. The court therefore denied her petition to vacate that decree, and she brings this appeal.

■ 1. In reviewing a proceeding to vacate a judgment, we do not review the record de novo. The trial court has considerable discretion in deciding whether to grant such relief. *In re Marriage of Bauder,* 316 N.W.2d 697, 700 (Iowa App.1981). "If there is conflicting evidence, or if different inferences may reasonably be drawn from the facts shown, the trial court's findings have the effect of a jury verdict." *Windus v. Great Plains Gas,* 255 Iowa 587, 593–94, 122 N.W.2d 901, 905 (1963).

■ We conclude that Patricia has not presented enough evidence indicating the trial court abused its discretion in denying her petition to vacate. She first alleged that the default decree of February 13 was obtained by the practice of fraud or irregularity as referred to in Iowa R.Civ.P. 252(b). That rule states "Upon timely petition and notice under R.C.P. 253 the court may correct, vacate, or modify a final judgment or order, or grant a new trial on any of the following grounds: ... (b) Irregularity or fraud practiced in obtaining the same." It was her burden to show clearly such grounds. *In re DePenning's Estate,* 244 Iowa 690, 701, 58 N.W.2d 9, 14 (1953).

Patricia has not sustained her burden of proof. "Fraud" as used in Rule 252(b) has its usual meaning; that is, it includes "any act, omission, or concealment which involves a breach of legal or equitable duty, trust, or confidence, and is injurious to another, and by which an undue or unconscientious advantage is taken of another." *Reimers v. McElree,* 238 Iowa 791, 797, 28 N.W.2d 569, 572 (1947). Patricia testified that Dennis told her a number of times he wanted only visitation, not custody of Ezechiel. She did not understand that custody was to be discussed at the February 11 hearing. Michael Brint, Patricia's attorney in Pennsylvania, testified that he got the impression from talking with Richard Heimann, Dennis' attorney, that the only issue was Dennis' visitation rights and that all of his (Brint's) actions thereafter were based on that assumption until he received a copy of the default decree containing the order changing custody. Brint did not file Patricia's petition of December 19 in the Polk County court as required by the UCCJA because he saw no need for it; he thought the visitation problem could be solved relatively peacefully.

We do not believe this is a clear showing of any fraud or irregularity. Dennis' application clearly states his desire for modification of the custody decree. Hermann sent Brint a letter and copies of all the documents relating to Dennis' application on December 29, 1980, which Brint admittedly received shortly thereafter. This occurred after the phone call in which Hermann made the alleged misrepresentations. Thus, Patricia and her attorney had sufficient notice of Dennis' intent to modify the custody decree. Brint's mistaken impressions of Dennis' intent cannot be termed "fraud" or "irregularity" on Dennis' part. Trial court did not abuse its discretion in rejecting Patricia's claim under Iowa R.Civ.P. 252(b).

■ II. Patricia also alleged that the default decree should be vacated pursuant to Iowa R.Civ.P. 252(e); i.e. because "unavoidable casualty or misfortune prevent[ed] her] from prosecuting or defending." This argument apparently rests on Brint's failure to take action required to protect Patri-

cia's interests. In his testimony, Brint admitted that he should not have proceeded as he did, but he reiterated his reliance on Hermann's alleged misrepresentations.

"Unavoidable casualty or misfortune" has been defined as follows:

Unavoidable casualty or misfortune means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor, would have been done, *and does not include mistakes or errors of judgment growing out of misconstruction or misunderstanding of the law, or the failure of parties or counsel through mistake to avail themselves of remedies, which if resorted to would have prevented the casualty or misfortune.*

*Lemke v. Lemke,* 206 N.W.2d 895, 897 (Iowa 1973) (emphasis added). The following language is found in *Windus v. Great Plains Gas,* 255 Iowa 587, 595, 122 N.W.2d 901, 906 (1963);

There is no inclusion in Rule 252 of any right to vacate a judgment for mistake, inadvertence or excusable neglect. There is a wide difference between these terms and "unavoidable casualty or misfortune." Mistakes may be made; inadvertence may be present; and excusable neglect covers a wide latitude of negligence. But none of these, which will justify setting aside a default, amount to unavoidable casualty or misfortune. By their definitions, they are not such.

We conclude that Brint's conduct falls within the realm of "mistake, inadvertance or excusable neglect" which will not support a petition to vacate judgment under Rule 252. Again, Brint was aware of the contents of Dennis' application and he admittedly did not follow the procedures as set forth in the UCCJA. His negligence in this respect is chargeable to Patricia. *See Windus,* 255 Iowa at 595, 122 N.W.2d at 906. Trial court did not abuse its discretion on this ground.

III. We also reject Patricia's claim that the trial court erred in finding she failed to prove irregularity or fraud practiced by

Dennis and his attorney aimed at depriving her of her right to file a motion to set aside the default decree pursuant to Iowa R.Civ.P. 236 or a motion for a new trial under Iowa R.Civ.P. 244. Our analysis in Division I and II of this opinion applies to dispose of this issue; we need not repeat it here.

We affirm the decision of the trial court.

AFFIRMED.