**In re the MARRIAGE OF Jay A. BUTTERFIELD and Nancy A. Butterfield**

**Upon the Petition of Jay A. Butterfield, Appellee,**

**And Concerning Nancy A. Butterfield, Appellant.**

No. 92–506.

Court of Appeals of Iowa.

March 30, 1993.

Jill S. Rolek, Des Moines, for appellant.

Ted Brown, Storm Lake, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Nancy Butterfield appeals from a judgment of the district court denying her motion to set aside the dissolution decree pursuant to Iowa Rule of Civil Procedure 252.

Jay and Nancy Butterfield were married in February 1986. Nancy was the custodial parent of two minor children by a previous marriage. Since 1972, Jay had been involved in the silk screening business. In 1985, a partnership in which Jay had previously been involved split and Jay started his own business, known as Silk Screen Ink. Jay did not earn any significant income due to the large amount of debt he incurred in setting up his businesses. Nancy worked full-time at Siefer Consultants, Inc., earning about $15,000 per year. At the time of the parties' marriage, Jay owed about $60,000 in business debt resulting from start-up costs. Nancy generally paid for the family expenses for Jay, herself, and her two children. Jay made payments on the mortgage, insurance, and taxes for the family home. He borrowed $10,000 to remodel the home. Jay also paid for Nancy's health insurance.

Jay's business, Silk Screen Ink, was incorporated in 1988. Over the next few years, sales for the company grew rapidly and Jay borrowed additional money to meet the expenses of this growth. In 1989, an additional debt of $20,000 was incurred for leasehold improvements.

In 1988, Jay also started another business, Plaques Unlimited. He incurred over $70,000 in additional debt, including a loan from his mother, and purchased a building on contract for about $40,000. The venture turned out to be a total loss and Jay was left owing money on the debts. In 1989, Jay purchased a sign business, Commercial Sign and Design, for $17,000 on contract in order to stimulate the business of Plaques Unlimited. However, this business did not fare well either and it generated little income. Jay subsequently contracted with another company, Dungeon Graphics. He borrowed about $65,000 to purchase an automatic printing machine for that business. Three months later, the company with which Jay had contracted closed and Jay was again left with substantial debt. In July 1990, a local bank took possession of $44,000 in certificates of deposits owned by Jay's mother to pay off some of Jay's debts. By August 1990, Jay's businesses had debts of approximately $330,000.

Throughout the marriage, Nancy had been listed as a corporate officer for the four businesses (Silk Screen Ink, Plaques Unlimited, Dungeon Graphics, and Commercial Sign and Design). In her capacity as officer, Nancy signed various financial documents and papers. However, she testified she never understood what she was signing and she never attended any officers' meetings.

During the summer of 1990, Nancy indicated to Jay her intent to dissolve the marriage. Nancy prepared a handwritten list of household goods indicating the personal property to which she believed she was entitled. In their discussions regarding the impending dissolution, Jay told Nancy he believed the large amounts of debt they had incurred would either equal or exceed the value of their assets.

Jay contacted an attorney, Hugh Perry, who had previously done work for Jay's business ventures. Jay wanted Perry to file the petition on behalf of Nancy since she had wanted the dissolution. Perry stated he could not represent Nancy because of his prior dealings with Jay. However, Perry offered to represent Jay and file the petition on his behalf. The petition was subsequently filed in August 1990. At that time, Nancy met with Perry in his office to sign the acceptance of service. During the meeting, Nancy alleges Perry confirmed Jay's statements regarding the parties' financial condition. Perry denies he ever made any such statements to Nancy.

The other contact Nancy had with Perry occurred in late October 1990. At that time, Nancy signed a motion waiving the ninety-day waiting period and a stipulation incorporating the division of property between Nancy and Jay. Pursuant to the stipulation, Nancy was awarded health insurance until August 1991 and residency in the family home until June 1991. She would receive the personal property in accordance with the parties' earlier agreement. Jay received all the parties' interest and indebtedness from the various businesses, including Silk Screen Ink, Plaques Unlimited, and Commercial Sign and De-sign. Perry had drafted both documents. On October 29, 1990, the district court entered its decree dissolving the parties' marriage and approving the stipulation.

On October 10, 1991, Nancy filed an application to set aside the decree and motion for new trial pursuant to Iowa Rule of Civil Procedure 252. In February 1992, following a two-day hearing, the district court denied Nancy's application and motion in their entirety. Nancy now appeals.

Nancy argues the district court erred in denying her application to vacate the decree and her motion for a new trial. She specifically contends the original district court was deprived of jurisdiction to enter the October 29, 1990, decree due to the parties' noncompliance with Iowa Code section 598.13 (1989). Nancy argues the district court erred in not ordering sanctions against Jay pursuant to Iowa Rule of Civil Procedure 134. She also claims the court erred in failing to set aside the decree because attorney Perry practiced dual representation. Finally, she contends the decree should be set aside pursuant to rule 252 on the basis of Jay's fraudulent representations.

■ Nancy made her application to vacate the decree and her motion for a new trial pursuant to rule 252 on the grounds of irregularity and fraud which was practiced by Jay in obtaining the decree, and on the grounds of newly discovered material evidence. *See* Iowa R.Civ.P. 252(b), (f). In reviewing a proceeding to vacate a judgment under rule 252, we recognize the proceeding is an action at law. *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa App.1986) (citing *Kreft v. Fisher Aviation, Inc.*, 264 N.W.2d 297, 303 (Iowa 1978)). Therefore, our review is not de novo. *Id.* The appropriate standard is that the district court's findings of fact have the effect of a jury verdict, and those findings are binding upon us if there is substantial evidence to support them. *Id.* at 800 (citing *Mishler v. Stouwie*, 301 N.W.2d 744, 747 (Iowa 1981)).

**I.** ***Whether the District Court was Deprived of Jurisdiction Due to its Noncompliance with Section 598.13.*** Nancy first

contends the original district court lacked jurisdiction in entering the October 29, 1990, decree because the parties failed to comply with Iowa Code section 598.13 (1989).

Iowa Code section 598.13 (1989) provides, in relevant part:

Both parties shall disclose their financial status. A showing of special circumstances shall not be required before the disclosure is ordered. A statement of net worth set forth by affidavit on a form prescribed by the supreme court and furnished without charge by the clerk of the district court shall be filed by each party prior to the dissolution hearing. However, the parties may waive this requirement upon application of both parties and approval by the court.

The purpose of section 598.13 is to mandate the disclosure of each parties' financial status. *See In re Marriage of Williams*, 421 N.W.2d 160, 164 (Iowa App.1988).

The fact financial affidavits pursuant to section 598.13 were not filed does not raise a jurisdictional question. Iowa Code section 598.2 (1989) provides that the district court has original jurisdiction of dissolution actions and that venue shall be in the county where either party resides. Both Jay and Nancy are residents of Buena Vista County. Therefore, the district court of Buena Vista County certainly had jurisdiction to enter the October 29, 1990, decree. *See In re Marriage of Thrailkill*, 438 N.W.2d 845, 848 (Iowa App.1989) (court found dissolution decree, having been entered by a court of record, was presumptive evidence of the facts essential to jurisdiction).

We nevertheless address the issue of the parties' compliance with section 598.13. We concede no financial affidavits were ever filed by either party in the dissolution action. However, the stipulation entered into by Jay and Nancy provided for the agreed disposition of the marital properties. Iowa Code section 598.21(1)(k) (1989) allows the court to consider "any written agreement made by the parties concerning property distribution" in devising an equitable property distribution. A stipulation of settlement in a dissolution proceeding is a contract between the parties. *In re Marriage of Lawson*, 409 N.W.2d 181, 183 (Iowa 1987). The stipulation becomes final when it is accepted and approved by the court. *Id.*

Even though no financial affidavits were filed, it appears there was considerable discussion between Jay and Nancy regarding their financial status. In those discussions, the representations made by Jay regarding his financial condition were substantially accurate. The record indicates, despite the failure to file financial affidavits pursuant to section 598.13, Nancy was not misled as to Jay's financial status.

The district court has considerable discretion in deciding whether to vacate a judgment. *In re Marriage of Bauder*, 316 N.W.2d 697, 700 (Iowa App.1981). It was well within the district court's discretion to find the parties' failure to comply with section 598.13 did not constitute such a fraud or irregularity to justify setting aside the decree.

**II. *Whether the District Court Abused its Discretion by Refusing to Apply Sanctions Under Rule 134.*** Nancy next argues the district court should have applied sanctions pursuant to Iowa Rule of Civil Procedure 134 because Jay failed to comply with section 598.13. She specifically requests $8108.50 in attorney fees from the district court level, $4212.50 in appellate attorney fees, and an allowance of $5000 to prosecute this matter if it is remanded to a new trial.

The latter part of Iowa Code section 598.13 (1989) states the "[f]ailure to comply with the requirements of this section constitutes failure to make discovery as provided in rule of civil procedure 134." Iowa Rule of Civil Procedure 134 allows the court to impose sanctions when it is determined that a party has failed to obey an order to provide or permit discovery. The district court has wide discretion in its decision of whether to impose sanctions pursuant to rule 134. *Wernimont v. Int'l Har-*

*vester Corp.*, 309 N.W.2d 137, 143 (Iowa App.1981).

■ Initially, we note neither Jay nor Nancy complied with section 598.13. The fact that Nancy was not represented by counsel would not excuse her failure to comply with section 598.13. Substantial departure from statutory procedures cannot be permitted on the basis that a layperson is handling his or her own legal matters. *See State v. Dunham*, 232 N.W.2d 475, 477 (Iowa 1975).

■ However, as discussed above, we do not find the failure to comply with section 598.13 was such an irregularity so as to justify vacating the dissolution decree. The district court did not abuse its discretion in declining to impose sanctions, including an award of attorney fees, against either party.

**III. *Whether Perry's Actions Constituted Dual Representation.*** Nancy next contends the district court erred in failing to void the dissolution decree on the grounds that attorney Perry's actions constituted dual representation of the parties.

■ After Nancy initiated the discussion regarding dissolution, Jay asked Perry to file a petition for Nancy. Perry properly advised Jay he could only represent one party to the dissolution, and he was unable to represent Nancy because of his prior dealings with Jay. As a result, the petition was prepared by Perry for Jay as the petitioner. Both the petition and the original notice clearly stated Perry was Jay's attorney. The stipulation which was signed by Nancy explicitly stated: "Respondent [(Nancy)] understands that she has the right to be represented by an attorney in these proceedings and has chose of her own volition not to be represented by counsel."

The only proof Nancy offers to establish that Perry's actions constituted dual representation is her own, self-serving testimony. At trial, Nancy claimed Perry affirmed Jay's statements regarding the parties' financial condition at the August 1990 meeting. However, Perry testified he did not discuss the parties' financial dealings with Nancy at that time. He denied he ever told Nancy that the amount of Jay's debts canceled out the value of the assets. Perry also testified there was no such discussion between himself and Nancy at their second meeting which was held in October 1990.

In our review, we must defer to the district court's assessment of the credibility of the witnesses. Our review is not de novo. *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa App.1986). The appropriate standard is that the district court's findings of fact have the effect of a jury verdict, and those findings are binding upon us if there is substantial evidence to support them. *Id.* at 800 (citing *Mishler v. Stouwie*, 301 N.W.2d 744, 747 (Iowa 1981)). There was substantial evidence to support the district court's decision to not vacate the decree based on Perry's actions.

**IV. *Whether There was Substantial Evidence of Fraud or Irregularity to Justify Setting Aside the Dissolution Decree.*** In addition to the failure of the parties to comply with section 598.13 and in addition to Perry's actions, Nancy contends the decree should be set aside because the facts of this case indicate she was fraudulently misled as to the parties' financial status.

■ Iowa Rule of Civil Procedures 252(b) provides that, upon timely petition and notice, the court may vacate a final judgment or order, or grant a new trial on grounds of "irregularity or fraud practiced in obtaining the same." The burden is on Nancy to prove fraud or irregularity by clear and convincing evidence. *In re Marriage of Heneman*, 396 N.W.2d 797, 800 (Iowa App.1986). "Fraud" as used in rule 252(b) includes: "any act, omission, or concealment which involves a breach of legal or equitable duty, trust, or confidence, and is injurious to another, and by which an undue or unconscientious advantage is taken of another." *Copic v. Copic*, 325 N.W.2d 766, 769 (Iowa App.1982) (quoting *Reimers v. McElree*, 238 Iowa 791, 797, 28 N.W.2d 569, 572 (1947)). *See also Heneman*, 396 N.W.2d at 800.

Initially, we note we already have found neither Jay's failure to comply with section 598.13 nor the actions of attorney Perry constitute "fraud" or an "irregularity" within the meaning of rule 252(b). Therefore, the issue remains whether, besides those two factors, the actions of Jay constituted a fraud or irregularity which justified vacating the decree pursuant to rule 252(b).

We find substantial evidence that Nancy was not misled as to the financial condition of the parties prior to the district court's entering of the dissolution decree. In her brief, Nancy focuses on the assets Jay received from the decree of dissolution. However, at trial, Jay presented substantial evidence as to the continued expenses and indebtedness, which totaled over $300,000, of these businesses.

Nancy specifically relies on a transaction into which Jay had entered at about the same time as the decree of dissolution was filed as evidence of fraud. In October 1990, Jay entered into preliminary discussions with a third party regarding the sale of a minority interest of his corporation. In December 1990, Jay sold the minority interest for $30,000. We do not find this to be clear and convincing evidence of fraud. As a practical matter, it is obvious this transaction would not have affected Jay's net worth. While Jay received $30,000 capital, his stock ownership was reduced by approximately one-half.

She also contends Silk Screen Ink had over $500,000 in gross sales in 1990 and its fair market value should have been assessed. At trial, Jay presented the testimony of Shane Rosene, an accountant, who had prepared both individual and corporate taxes for Jay and who had been in the public accounting business for fourteen years. Rosene testified the value of Jay's stock in the corporation was about $39,425. In addition to his testimony, numerous exhibits including tax returns and promissory notes were entered into evidence. Based upon his testimony and the other evidence introduced by Jay, there was substantial evidence Jay's debts at least equaled the value of his assets. Other than her assertion that the fair market value of Silk Screen Ink should have been assessed, Nancy failed to ever directly contradict Rosene's testimony regarding the value of Silk Screen Ink.

Nancy failed to establish fraud by clear and convincing evidence. The record in this case does not support Nancy's contention that Jay misled her or failed to disclose significant financial information to her. Therefore, we find there was substantial evidence to support the district court's ruling denying Nancy relief under rule 252.

The costs of this appeal are taxed to Nancy.

For the reasons stated, we affirm the judgment of the district court.

**AFFIRMED.**